**WASHINGTON–BALTIMORE NEWSPAPER GUILD, LOCAL 35**

**v.**

**THE WASHINGTON POST, Appellant.**

**No. 91–7021.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 3, 1992.

Decided March 20, 1992.

Willis J. Goldsmith, with whom Patricia A. Dunn, Washington, D.C., was on the brief, for appellant.

Robert E. Paul, Washington, D.C., for appellee.

Before: WALD, SILBERMAN and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

The Washington Post appeals the district court's grant of summary judgment to Local 35 of the Washington-Baltimore Newspaper Guild. The Guild sought and gained an order directing the Post to arbitrate, under their collective bargaining agreement, a claim concerning the pay scale for a few job categories. We affirm the district court, but because the collective bargaining agreement expressly provides that disputes over arbitrability should be submitted to an arbitrator, we modify the district court's order to direct arbitration of the arbitrability question first.

I.

The union and the newspaper, after extensive negotiations, reached a new five-year collective bargaining agreement in August of 1989. A good deal of bargaining had focused on whether various job classifications should receive higher minimum salaries, or "upgrades," and the Post Personnel Department (sometimes assisted by an outside consultant) had been conducting compensation reviews that served as one basis for those discussions. The reviews were designed to determine whether existing salary levels were commensurate with job responsibilities and with prevailing wages in the relevant labor market. The Post, however, had not yet finished the reviews for six groups of employees, including "news library" positions (the object of this litigation), by the date the parties wished to sign the Agreement. The parties therefore executed a "Sideletter # 2," which stated: "The Post agrees to review all such [non-upgraded] positions ... within 120 days after the signing of the [Agreement]. The parties will then meet for the purpose of discussing such reviews."

After completing the Sideletter # 2 reviews as scheduled, the Post announced that it would make some adjustments to specific positions but would not grant any substantial general upgrades. The Post offered to "discuss" the results of the reviews with Local 35, but stated that those "results are not subject to negotiation or arbitration with the Guild." The Guild responded by filing a grievance over the Post's refusal to upgrade the news library positions, and, after two fruitless meetings with management, demanded arbitration, seeking an appropriate upgrade as well as backpay and benefits. The Post rejected the demand and also refused "to submit to an arbitrator its claim that the [upgrade] matter is not arbitrable." The union then came to the district court to compel arbitration.

The Guild asserted before the district court, although with little elaboration, that the Post "at minimum ... must be ordered to arbitrate its claim that this matter is not subject to the arbitration machinery in the contract"—*i.e.*, to arbitrate the arbitrability question. The union's main argument, however, was that the district court should order arbitration of the underlying upgrade dispute. According to the Guild, Article

XXII of the Agreement[1] was a "broad" arbitration clause creating a presumption of arbitrability of contract disputes that could be overcome only by an " 'express provision excluding a particular grievance from arbitration ... [or] the most forceful evidence of a purpose to exclude the claim from arbitration.' " *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 584–85, 80 S.Ct. 1347, 1354, 4 L.Ed.2d 1409 (1960)). Far from providing a basis for rebutting this presumption, the Guild asserted, Articles VI(5)(b)[2] and XXII of the Agreement, Sideletter # 2, and the history of the negotiations demonstrate that the upgrade grievance was specifically intended to be arbitrable.

The Post, in response, claimed that the "meet and discuss" language of Sideletter # 2 implicitly but clearly rejects the prospect of arbitration of any dispute as to the news library upgrade. The Post argued that when labor negotiators use such terms they pointedly mean to exclude arbitration, that this usage is evident elsewhere in the Agreement, and that the bargaining history (buttressed by several affidavits from Post negotiators) supports this interpretation. It was further asserted that even if the sideletter is somewhat ambiguous as to whether arbitration of an upgrade dispute was contemplated, the *AT & T* presumption of arbitrability that flows from a broad arbitration clause does not apply here because the Guild is seeking quasi-legislative "interest" arbitration rather than the more orthodox quasi-judicial "rights" arbitration. *See generally* F. Elkouri & E. Elkouri, How Arbitration Works 98–99 (4th ed. 1985). In other words, the Post contended that the *AT & T* presumption applies only when a party makes a claim that a norm in its collective bargaining agreement has been violated (*e.g.,* that the employer is paying five cents less than the wage specified in the contract) and seeks recourse to the arbitration machinery designed to adjudicate rights under the contract; the presumption does not extend to arbitration designed to establish new norms (*e.g.,* what wage certain employees should receive). The Post–Guild Agreement provides for both kinds of arbitration, but the one the union seeks to employ to decide the pay of the news library employees is interest arbitration. And the Post asserted that a previous arbitration had established that the limited interest arbitration allowed by Article VI(5)(b) did not cover the upgrade dispute.

The district court accepted the Guild's position and granted summary judgment directing arbitration of the upgrade grievance. *See Washington–Baltimore Newspaper Guild v. Washington Post,* Civ. No. 90–0644, Mem.Op. at 8–9 (D.D.C. Jan. 22, 1991). In doing so, the district judge apparently did not focus on the significance of the clause in Article XXII of the Agreement expressly delegating to the arbitrator "any question of whether a grievance is arbitrable."

## II.

It appears that the Guild, both before the district court and on appeal, was swinging for the fences. It based almost its entire case on the proposition that the district court should order arbitration of the upgrade (merits) dispute and certainly did not emphasize the alternative and more modest claim that the Post should "at minimum"

1. Article XXII states, in relevant part:

   1. ... A grievance is an alleged violation of this Agreement, arising out of the interpretation, application, or administration of the provisions of this Agreement....

   2. A grievance, as defined in Section 1 above ..., including any question of whether a grievance is arbitrable, ... may be submitted to arbitration by the moving party.... The arbitrator shall not have the authority to amend, modify, nullify, ignore or add to the provisions of this Agreement....

2. Article VI(5)(b) provides for interest arbitration under the grievance procedure of Article XXII if the Post "creates a new position or substantially alters the nature of an existing job" and discussions with Local 35 to set a new salary scale do not produce agreement. The Guild alleged that the news library positions had changed substantially in recent years.

be compelled to submit to the arbitrator the issue of arbitrability. As we noted, however, the union was careful to preserve the alternative argument before the district court, and its brief on appeal did call our attention to the Agreement's language referring questions of arbitrability to the arbitrator.

The authority of the federal courts to determine arbitrability—whether the parties to a collective bargaining agreement have agreed to submit a particular dispute to arbitration—has proven rather perplexing. Despite the Supreme Court's consistent position on the issue, *see, e.g., John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 546–47, 84 S.Ct. 909, 912, 11 L.Ed.2d 898 (1964); *Warrior & Gulf,* 363 U.S. at 582–83, 80 S.Ct. at 1352–53, it has repeatedly been argued that an arbitrator is in a better position than a court to determine the arbitrability as well as the merits of a grievance because the issues are so often interrelated, *see, e.g., Communications Workers v. Western Elec. Co.,* 751 F.2d 203, 205–07 (7th Cir.1984), *rev'd sub nom. AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). In 1986, however, the Court put what should be a definitive end to the debate. In *AT & T Technologies,* the Court reaffirmed that because arbitration is a matter of contract, "arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." 475 U.S. at 648–49, 106 S.Ct. at 1418. Normally, then, "the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.* at 649, 106 S.Ct. at 1418.

■ The parties may, however, avoid this judicial determination by "clearly and unmistakably provid[ing] otherwise." *Id.; see also United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 571, 80 S.Ct. 1343, 1364–65, 4 L.Ed.2d 1403 (1960) (Brennan, J., concurring); *National R.R. Passenger Corp. v. Boston & Maine Corp.,* 850 F.2d 756, 761 (D.C.Cir.1988) ("[T]he parties may agree to arbitrate questions of breadth [of an arbitration clause]."). That is precisely what the Guild and the Post did in Article XXII(2) of the Agreement, which, as we have seen, provides that "[a] grievance, ... *including any question of whether a grievance is arbitrable,* ... may be submitted to arbitration by the moving party" (emphasis added). As Professor Cox explained many years ago, "[a] specific stipulation giving the arbitrator power to decide all questions of arbitrability is in substance a promise to submit to arbitration all questions concerning the meaning of the arbitration clause. There is no doubt about the effectiveness of such a stipulation." Cox, *Reflections Upon Labor Arbitration,* 72 Harv.L.Rev. 1482, 1508 (1959). *See, e.g., United Food & Commercial Workers Union v. Lucky Stores, Inc.,* 806 F.2d 1385, 1386–87 (9th Cir.1986).

The Guild's demand that the Post arbitrate the arbitrability dispute is thus itself arbitrable under the terms of the Agreement. Article XXII(1) defines a "grievance" as "an alleged violation of this Agreement, arising out of the interpretation, application, or administration of the provisions of this Agreement." Article XXII(2) then states that "[a] grievance, as defined in Section 1 ..., including any question of whether a grievance is arbitrable, ... may be submitted to arbitration by the moving party...." Even if the underlying upgrade dispute is one that could be resolved only in an interest arbitration, the Guild's claim that the Post must submit that dispute to arbitration is clearly founded on an asserted right arising out of the existing terms of the Agreement and therefore is a grievance subject to rights arbitration under Article XXII.

■ The Post has little response. Its counsel did contend at oral argument that any arbitrability grievance was untimely. When pressed, however, he conceded that no timeliness argument was raised below. In any event, such "procedural" arbitrability questions are for arbitrators and not courts to decide. *See John Wiley & Sons,* 376 U.S. at 557–59, 84 S.Ct. at 918–19.

Because the Guild's claim that the Post violated the contract by refusing to put the question of arbitrability to an arbitrator is

so obviously meritorious, we find it unnecessary to grapple, as did the district court, with the much more difficult question of whether the parties agreed to submit the underlying upgrade dispute to arbitration. To be sure, the union did not, before this court, present a full-blown argument supporting the proposition that appears to us so plainly decisive, and we dislike to rely on an argument so casually raised. *See, e.g., Rollins Environmental Servs. (NJ), Inc. v. EPA*, 937 F.2d 649, 653 n. 2 (D.C.Cir.1991). We do so in this case for several reasons.[3] First, as decisions such as *AT & T* indicate, the issue of which tribunal, the federal court or the arbitrator, is authorized to determine the arbitrability of a dispute has a jurisdictional cast. And even if we had authority to decide the issue, it would not necessarily be exclusive: if we were to conclude that the underlying upgrade grievance was arbitrable, at least some courts have held that the arbitrator could revisit the issue and, notwithstanding our opinion, decide it the other way. *See* How Arbitration Works at 218. Moreover, the issue of arbitrability of the upgrade grievance is not only analytically complex, raising several unsettled questions of law, it also would require us to delve deeply into the language of the contract and the tangled evidence of bargaining history to determine whether any issue of material fact precludes summary judgment.[4] If we discerned such an issue, the case would have to be remanded to the district court for further proceedings that might prove, particularly in light of the arbitrator's contractual authority to determine arbitrability, wholly unnecessary and wasteful. Finally, we wish to emphasize to the district courts that in similar cases, if a party points to language in a collective bargaining agreement clearly delegating arbitrability questions to the arbitrator, there is no need or purpose in determining arbitrability.

* * * * * *

Accordingly, we affirm the district court's order as modified by this opinion. The dispute regarding the arbitrability of the upgrade grievance shall be submitted to an arbitrator, and only if the arbitrator determines that the upgrade claim is arbitrable will the appellee be obliged to submit it to arbitration.

*It is so ordered.*

3. We have discretion to *uphold* a grant of summary judgment under a legal theory different from that applied by the district court, resting the affirmance on any ground that finds support in the record, particularly one raised before the district court. *See, e.g., Sadlowski v. United Steelworkers*, 645 F.2d 1114, 1119–20 (D.C.Cir. 1981), *rev'd on other grounds*, 457 U.S. 102, 102 S.Ct. 2339, 72 L.Ed.2d 707 (1982).

4. The parties gave us the opportunity to read very extensive briefs on these subjects.