# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 10, 2006   Decided March 20, 2007

No. 05-7110

NADINE CHANDLER WILBURN,
APPELLANT

v.

KELVIN ROBINSON,
CHIEF OF STAFF TO MAYOR ANTHONY WILLIAMS,
INDIVIDUALLY AND HIS OFFICIAL CAPACITY, *ET AL.*,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 04cv00078)

*Gregory L. Lattimer* argued the cause for the appellant.

*Joel P. Bennett* argued the cause for appellee Kelvin Robinson.

Before: HENDERSON, ROGERS and BROWN, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

Dissenting Opinion filed by *Circuit Judge* BROWN.

KAREN LECRAFT HENDERSON, *Circuit Judge*: On May 14, 2003, District of Columbia (District) Mayor Anthony Williams appointed a new Director of the District's Office of Human Rights (OHR).  The appellant, Nadine C. Wilburn (Wilburn), brought suit against both the District and Williams's former chief of staff, Kelvin Robinson (Robinson), under 42 U.S.C. § 1983, alleging that she was not selected for the Director's position in retaliation for the exercise of her First Amendment right to criticize the District government.  After concluding that the District was not a party to the suit, the district court granted Robinson's motion for summary judgment because Wilburn's speech had no causal connection to the subsequent adverse employment decision.  Wilburn appeals.  For the reasons set forth below, we affirm the district court on the alternative ground that Wilburn's non-selection did not violate her First Amendment rights.

## I.

Wilburn began serving as OHR Interim Director in June 2002.  On assuming the position, Wilburn set out to staff the OHR's legal unit with a new general counsel and attorney advisor, extending offers to two black females employed elsewhere in the District government.  The District Office of Personnel (DCOP), however, refused to authorize the salaries Wilburn requested for the two candidates, relying on a District policy setting the salaries of candidates already employed elsewhere in the District government below the salaries offered to applicants employed outside the District government. Thereafter, Wilburn requested reconsideration of the DCOP decision, asserting that such differentiation between applicants from inside and outside District government violated the United States Constitution and the District's Human Rights Act. Specifically, Wilburn suggested that the salary denials were

motivated by the race and gender of the two candidates. DCOP denied Wilburn's reconsideration request and admonished her for "condoning such unsubstantiated allegations" of discrimination. Decl. of Nadine Wilburn (Wilburn Decl.), *reprinted in* Joint Appendix (JA) at 116. Wilburn persisted and the dispute with DCOP ultimately culminated in a meeting with Deputy Mayor Carolyn Graham (Graham), Wilburn's direct supervisor, which meeting resolved the matter to Wilburn's satisfaction.

In late November 2002, the District announced its intention to fill the directorship of OHR on a permanent basis, requesting applications from interested individuals. Wilburn submitted an application in December 2002. As part of the selection process, the Mayor appointed a three-member team, including Robinson, Graham and City Administrator John Koskinen, to advise him on the selection of OHR's permanent director. From an initial pool of four hundred candidates, three finalists, including Wilburn, were identified for interviews. Following initial interviews, the panel recommended that the Mayor appoint either Wilburn or Kenneth Saunders (Saunders) as OHR Director, scheduling interviews for them with the Mayor. On April 14, 2003, Wilburn had her final interview with Mayor Williams. Within ten days of the interview, the Mayor mentioned in a speech that he intended to appoint Wilburn as the permanent OHR Director. Yet this intention proved fleeting and the Mayor subsequently named Saunders as the new OHR Director.

Believing that her non-selection resulted from Robinson's retaliation for her earlier race and gender discrimination accusations, Wilburn filed suit in the district court. Wilburn asserted that her discrimination allegations constituted protected speech under the First Amendment to the United States

Constitution and that Robinson's retaliation for her exercise of protected speech violated Wilburn's constitutional rights, entitling her to damages under 42 U.S.C. § 1983.[1]

Because the district court determined that Wilburn produced "neither competent direct evidence nor sufficient indirect evidence to support a finding of a causal connection between her alleged protected speech and her non-selection," the court granted summary judgment to Robinson. *See* Mem. Op., *reprinted in* JA at 36–37. The court's conclusion largely rested on its determination that the only direct evidence of causation—Wilburn's allegation that Graham told her that her non-selection resulted from Robinson's retaliation, Wilburn Decl. at JA 120—constituted inadmissible hearsay because the District was not a party to the suit and, thus, Graham's statement did not meet the hearsay exemption for the admission of a party-opponent under Federal Rule of Evidence 801(d)(2). Mem. Op. at JA 34. Further, it held that Graham's statement could not

---

[1]Wilburn also alleged that her non-selection as permanent OHR Director violated the District's Whistleblower Act. *See* Compl. ¶¶ 43, 45, *reprinted in* JA at 293, 294; D.C. Code § 1-615.53 ("A supervisor shall not threaten to take or take a prohibited personnel action or otherwise retaliate against an employee because of the employee's protected disclosure . . . ."). This claim relates to information Wilburn provided during an investigation of a local law firm and its contracts with the District government launched by District Council Member Jim Graham in early 2003. Because the district court granted summary judgment to Robinson on Wilburn's section 1983 claim, the sole federal cause of action, the district court dismissed—without prejudice—the Whistleblower Act claim for lack of jurisdiction. Wilburn subsequently refiled the claim in Superior Court.

convert to evidence admissible at trial[2] and therefore it could not support a reasonable jury's finding of retaliation. *See* Mem. Op. at JA 34.[3] Thereafter, Wilburn moved for reconsideration under Federal Rule of Civil Procedure 60(b) (Rule 60(b)), asserting that the district court erred in rejecting her proffered direct evidence. The district court denied her motion, again concluding that the District was not a party and thus Graham's statements were inadmissible. *See* Mem. Op. on Mot. for Recons., *reprinted in* JA at 8. Wilburn appeals both the grant of

---

[2]"While a nonmovant is not required," at the summary judgment stage, "to produce evidence in a *form* that would be admissible at trial, the evidence still must be capable of being converted into admissible evidence." *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000) (emphasis in original). The district court found the hearsay incapable of conversion because Graham, the only other party to the alleged conversation, "explicitly denie[d] making the statements." Mem. Op. at JA 34; *see also* Dep. of Carolyn Graham, *reprinted in* JA at 250–51; *Gleklen*, 199 F.3d at 1369 ("[Defendant's] evidence about the conversation is sheer hearsay; she would not be permitted to testify about the conversation at trial. It therefore counts for nothing." (internal citation omitted)).

[3]The district court also found Wilburn's indirect evidence of causation lacking due to the time interval—nearly six months—between her discrimination assertions and her non-selection. *See* Mem. Op. at JA 34–35; *see also Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (citing cases finding temporal proximity of three months and four months insufficient to demonstrate causal connection); *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000) (finding sufficient temporal proximity because adverse employment action occurred "at the same time . . . [employee] was filing formal complaints of both discrimination and retaliation").

summary judgment to Robinson as well as the denial of her motion for reconsideration under Rule 60(b).

## II.

We must first determine the timeliness of Wilburn's notice of appeal from the district court's grant of summary judgment as well as the parties defendant to this suit. Section A, *infra*, resolves the timeliness of Wilburn's notice of appeal and Section B, *infra*, identifies the correct parties defendant included in Wilburn's suit. Because we find Wilburn's appeal timely, Part III proceeds to the merits of her First Amendment claim.

## A.

To appeal a district court order, a party must file a notice of appeal within thirty days of the order's entry. *See* Fed. R. App. P. (FRAP) 4(a)(1)(A).[4] A timely motion for reconsideration under Rule 60(b), however, tolls the time to appeal from the underlying judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).[5] A motion for relief under Rule 60(b) is timely if "filed no later than 10 days after the judgment is entered." *Id.* Moreover, the district court may not extend the time for filing a Rule 60(b)

---

[4]FRAP 4(a)(1)(A) provides that "[i]n a civil case, . . . the notice of appeal . . . must be filed with the district clerk within 30 days after the judgment or order appealed from is entered." Fed. R. App. P. 4(a)(1)(A).

[5]Indeed, "[i]f a party timely files in the district court any of [the listed] motions under the Federal Rules of Civil Procedure, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion." Fed. R. App. P. 4(a)(4)(A). Among the listed motions tolling the time to file an appeal is a motion "for relief under Rule 60." Fed. R. App. P. 4(a)(4)(A)(vi).

motion. Fed. R. Civ. P. 6(b);[6] *see also Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 582 (D.C. Cir. 2002).

Here, the district court entered the order granting summary judgment to Robinson on June 30, 2005. Wilburn did not file her notice of appeal until August 10, 2005, however, rendering her appeal untimely absent a timely motion for reconsideration. Although Wilburn did file a motion for reconsideration pursuant to Rule 60(b), *see* Mot. for Recons., *reprinted in* JA at 13, she did so on July 18, 2005, which fell eleven business days after the summary judgment order. Thus, the motion was not timely and for that reason failed to toll the appeal period under FRAP 4(a)(4)(A)(vi).[7] Robinson, however, did not challenge the timeliness of Wilburn's motion for reconsideration or notice of appeal before the district court or in this court.

In the past, the failure to raise a timeliness objection—by a motion to dismiss, for example—did not matter as the deadlines provided in FRAP 4 were considered "jurisdictional." *See Ctr. for Nuclear Responsibility, Inc. v. U.S. Nuclear Regulatory*

---

[6]Under this rule, the district court "may not extend the time for taking any action under Rule[] . . . 60(b), except to the extent and under the conditions stated in [the Rule]." Fed. R. Civ. P. 6(b). Rule 60(b) does not include conditions permitting a district court to grant an extension of time. *See* Fed. R. Civ. P. 60(b).

[7]In contrast to the tardiness of Wilburn's appeal from the summary judgment order, her appeal from the order denying her motion for reconsideration was timely. The district court denied Wilburn's motion for reconsideration on August 4, 2005. *See* Mem. Op. on Mot. for Recons. at JA 8–9. Wilburn filed a notice of appeal therefrom on August 10, 2005, well within the thirty-day time limit prescribed by FRAP 4(a).

*Comm'n*, 781 F.2d 935, 941 & n.10 (D.C. Cir. 1986) (citing *Browder v. Dir., Dep't of Corr. of Ill.*, 434 U.S. 257, 264 (1978)) (noting that FRAP 4(a)'s time limit is "mandatory and jurisdictional" (internal quotation omitted)). In 2004, however, the Supreme Court rejected the term "jurisdictional" in relation to court filing rules. *See Kontrick v. Ryan*, 540 U.S. 443, 454–55 (2004). Noting that only the Congress possesses authority to alter the subject-matter jurisdiction of the lower federal courts, *id.* at 452, the Court found that confusion arose because "[c]ourts . . . have been less than meticulous" in labeling certain rules jurisdictional and "have more than occasionally used the term 'jurisdictional' to describe emphatic time prescriptions in rules of court," *id.* at 454.

At issue in *Kontrick* was Federal Rule of Bankruptcy Procedure 4004(a), which limits the time for filing an objection to the discharge of a debtor. *See id.* at 446–47 (describing 60-day limit from date of first creditors' meeting for creditor challenge to discharge). The Supreme Court held that the sixty-day limit did not affect the subject-matter jurisdiction of the bankruptcy court, constituting instead a "claim-processing rule[]." *Id.* at 454. Unlike subject-matter jurisdiction, the absence of which automatically divests the court of the power to adjudicate a claim, the effect of a claim-processing rule depends upon the parties' actions and may therefore be subject to forfeiture. *Id.* at 456. Consequently, the Court instructed lower courts to reserve the term "jurisdictional" "not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." *Id.* at 455.

In *Eberhart v. United States*, 126 S. Ct. 403 (2005), the Supreme Court built upon the distinction it had made in

*Kontrick* between claim-processing rules and jurisdictional rules. *Eberhart* involved the seven-day period after verdict to file a motion for a new trial under Federal Rule of Criminal Procedure 33(a) and (b)(2). *Id*. at 403. Alluding to the confusion caused by earlier cases describing certain time limits as "mandatory and jurisdictional," the Court suggested that those cases stretched the meaning of "jurisdictional" beyond that set forth in *Kontrick*. *See id*. at 405–06. In interpreting Rule 33 as a claim-processing rule, the Court described the characteristics of such a rule. *See id*. at 405. A claim-processing rule includes a "set period of time to file with the court" and prohibits a court from extending the time in which to take any action under the rule, except upon a showing of good cause. *Id*.[8]

The tolling language of Rule 4(a)(4)(A)(vi) fits the Court's description of a claim-processing rule.[9] Similar to the rules at issue in *Kontrick* and *Eberhart*, Rule 4(a)(4)(A)(vi) establishes a deadline—ten days—within which a party must file a Rule

---

[8]In this regard, the Court noted that many claim-processing rules—including those at issue in *Kontrick* and *Eberhart*—mirror the characteristics of Federal Rule of Civil Procedure 6(b), *Eberhart*, 126 S. Ct. at 407, which, as noted earlier, *see supra* note 6, prohibits the district court from extending the time to file a Rule 60(b) motion.

[9]Only the Sixth Circuit has expressly applied the *Kontrick* and *Eberhart* holdings to FRAP 4, concluding that Rule 4(a)(6) is jurisdictional rather than a claim-processing rule. *See Bowles v. Russell*, 432 F.3d 668, 671 n.1 (6th Cir. 2005). But *Bowles* relied on the fact that the Congress, which can alter subject-matter jurisdiction, codified Rule 4(a)(6)'s provisions for "reopening" the time for an appeal. *See id*.; 28 U.S.C. § 2107(c). In contrast, the tolling language of Rule 4(a)(4)(A)(vi) has not been made jurisdictional by statute.

60(b) motion in order to toll the time limit for filing a notice of appeal and which the district court cannot extend. *See* Fed. R. App. P. 4(a)(4)(A)(vi); *Toolasprashad*, 286 F.3d at 582 (citing Fed. R. Civ. P. 6(b)). In addition, as do the claim-processing rules in *Kontrick* and *Eberhart*, Rule 4(a)(4)(A)(vi)'s time limit "afford[s] . . . an affirmative defense to a complaint filed outside the [time] . . . limits." *Kontrick*, 540 U.S. at 456; *see also Eberhart*, 126 S. Ct. at 404 (noting *Kontrick* involved "defenses made available by the time limitations of Federal [Bankruptcy] Rules"). Indeed, a claim-processing time limit gives the opposing party the "right to object to a pleading on the ground that it was filed out of time," *Kontrick*, 540 U.S. at 446, thereby permitting him to defeat an appeal on timeliness grounds without reaching the merits. In the same way, Rule 4(a)(4)(A)(vi) allows the prevailing party in district court to challenge the timeliness of a motion for reconsideration and, consequently, the timeliness of the appeal from the underlying judgment.[10]

---

[10]Both parties mistakenly focus their timeliness discussions on the question whether Rules of Civil Procedure 59(e) and 60(b) are claim-processing rules. *See* Appellant's Supp. Reply Br. at 1–2; Appellee's Supp. Br. at 4. There are several problems with that focus. First, although the parties treat Wilburn's motion for reconsideration as if filed pursuant to Federal Rule of Civil Procedure 59(e), the motion references only Rule 60(b). *See* Mot. for Recons. at JA 13. Unlike Rule 59(e), which includes a set time period—ten days—within which a party must file a motion, Rule 60(b) includes no express time limit, *compare* Fed. R. Civ. P. 59(e) *with* Fed. R. Civ. P. 60(b), and to that extent bears little resemblance to the rules discussed in *Kontrick* and *Eberhart*. Second, the question in this case is whether Wilburn's appeal from the district court's summary judgment order was timely. Because the notice of appeal from that order fell outside the thirty-day

Although not jurisdictional, a claim-processing rule is nonetheless mandatory and "district courts must observe the clear limits of [time prescriptions] when they are properly invoked." *Eberhart*, 126 S. Ct. at 406. "[A] claim-processing rule . . . can nonetheless be forfeited if the party asserting the rule waits too long to raise the point." *Kontrick*, 540 U.S. at 456; *see also Day v. McDonough*, 126 S. Ct. 1675, 1686 (2006) ("We have repeatedly stated that the enactment of time-limitation periods . . . without further elaboration, produces defenses that are nonjurisdictional and thus subject to waiver and forfeiture."); *Eberhart*, 126 S. Ct. at 406 ("The net effect of *Robinson*, viewed through the clarifying lens of *Kontrick*, is to admonish [parties] that failure to object to untimely submissions entails forfeiture of the objection . . . ."). Because we conclude that the time limit of Rule 4(a)(4)(A)(vi) constitutes a claim-

limit, the question becomes whether Wilburn's motion for reconsideration tolled the thirty-day period. Tolling is governed by Rule 4(a)(4)(A), which extends the thirty-day period via a "timely" motion for reconsideration. *See* Fed. R. App. P. 4(a)(4)(A). Thus, the underlying motion is significant only if it includes a time limit for timely filing, which Rule 60(b) does not for the purpose of FRAP 4(a)(4)(A). *See* Fed. R. Civ. P. 60(b). Instead, Rule 4(a)(4)(A)(vi) defines the timeliness of a Rule 60(b) motion—ten days—to toll an otherwise untimely notice of appeal, *see* Fed. R. App. P. 4(a)(4)(A)(vi), and thereby provides a timeliness defense to a non-moving party. *Cf. Garland v. Malinich*, 181 F. App'x 276, 277–78 (3d Cir. 2006) (discussing timeliness of FRCP 60(b) motion under FRAP 4).

processing rule, the issue becomes whether Robinson forfeited the right to assert it.[11]

A party indisputably forfeits a timeliness objection based on a claim-processing rule if he raises the issue after the court has issued a merits decision. In *Kontrick*, for example, the debtor failed to raise a timeliness objection to his creditor's claims until his motion for reconsideration, *see Kontrick*, 540 U.S. at 451, having made only merits arguments before the underlying judgment was entered, *id*. at 449–50. The Supreme Court considered the timeliness objection forfeited because "[n]o reasonable construction of complaint-processing rules . . . would allow a litigant . . . to defeat a claim, as filed too late, after the party has litigated and lost the case on the merits." *Id*. at 460; *see also Eberhart*, 126 S. Ct. at 404, 407 ("[W]here the Government failed to raise a defense of untimeliness until after

---

[11]The dissent challenges our reading of *Eberhart* and resulting conclusion that FRAP 4(a)(4)(A)(vi) is a claim-processing rule. Dissent at 2. While there is no question that FRAP 4(a)(1)(A)'s 30-day rule implements 28 U.S.C. § 2107(a), we do not today hold that FRAP 4(a)(1)(A) is a claim-processing rule—instead we hold only that FRAP 4(a)(4)(A)(*vi*) is. The dissent also implies that the ten-day time limit contained in Rule 59(e) and the similar limit in Rule 60(b) imported from FRAP 4(a)(4)(A)(vi) are jurisdictional by an attenuated line of reasoning: (1) because 28 U.S.C. § 2107(a) is jurisdictional, FRAP 4(a)(1)(A) must also be jurisdictional and (2) because FRAP 4(a)(1)(A) is jurisdictional, the timeliness provisions contained in FRAP 4(a)(4)(A) must also be jurisdictional—meaning that 28 U.S.C. § 2107(a) renders Rule 59(e)'s ten-day period jurisdictional, at least for the purpose of appellate tolling. *See* Dissent at 3–4. It is unlikely that the Supreme Court had such jurisdictional boot-strapping in mind when it so plainly tightened its use of the term "jurisdictional" in relation to express time prescriptions included in the federal rules.

the District Court had reached the merits, it forfeited that defense.").

In contrast, in *United States v. Robinson*, 361 U.S. 220 (1960), the Supreme Court found the government's challenge to the defendant's untimely filing sufficient to bar the appeal. While the government failed to oppose the defendant's untimely notice of appeal in the district court, it filed a motion to dismiss the appeal as untimely in the court of appeals. *See Robinson*, 361 U.S. at 220–21. Thus, the government "responded not by contesting the merits of the appeal, but by moving to dismiss on the basis of untimeliness." *Eberhart*, 126 S. Ct. at 406. We recently applied this precedent to permit the appellee government to raise untimeliness as a bar to appeal for the first time in its initial brief to us. *See United States v. Singletary*, 471 F.3d 193, 195–97 (D.C. Cir. 2006). In so holding, we noted that "no rule, order, internal procedure, or published guidance from this court require[s] [a party] to object to the untimeliness of [an] appeal . . . before it file[s] its initial brief," emphasizing the fact that the government "did not address the merits of [the] appeal before it filed its brief setting forth its untimeliness objection." *Id*. at 196.

Unlike the *Singletary* appellee, Robinson did not challenge the timeliness of Wilburn's appeal in his initial brief to this court. Instead, he addressed only the merits of the appeal. Although he raised the timeliness issue in response to our order to the parties to consider the effect of *Eberhart* on this appeal, *see* Order (June 13, 2006), the argument comes too late. Because Robinson failed to timely assert the timeliness defense afforded by Rule 4(a)(4)(A)(vi), we deem Wilburn's Rule 60(b) motion to have tolled the period to appeal the summary

judgment order.[12]  Wilburn thus had thirty days from the district court's denial of her motion for reconsideration on August 4, 2005 to file a notice of appeal from the summary judgment order, *see* Fed. R. App. P. 4(a)(4)(A)(vi), a requirement plainly met by her notice of appeal filed on August 10, 2005. Accordingly, Wilburn timely appealed the district court's order granting summary judgment to Robinson.

**B.**

We review the district court's grant of summary judgment *de novo*, *see*, *e.g.*, *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 13 (D.C. Cir. 2005), applying the same standards as the district court and drawing all inferences from the evidence in favor of the non-movant. *See*, *e.g.*, *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 422–23 (D.C. Cir. 2005). We may affirm only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Mylan Labs.*, *Inc. v. Thompson*, 389 F.3d 1272, 1278–79 (D.C. Cir. 2004).

---

[12]*Day v. McDonough*, 126 S. Ct. 1675 (2006), is not, as the dissent suggests, inconsistent with this conclusion, *see* Dissent at 2–3.  While *Day* recognized the discretion of a district court "to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition" despite the government's forfeiture of its timeliness argument, *see Day*, 126 S. Ct. at 1684, the Supreme Court's holding was limited to federal habeas review, focusing on the long-standing discretion of district courts regarding other "threshold barriers" to federal habeas review of state court decisions, *id.* at 1681–82, 1684, where the "comity" interest cautions against federal assertion of jurisdiction, *id.* at 1683–84. Moreover, even if *Day* extends its recognition of the court's discretion beyond habeas review, such discretion also allows us to consider Wilburn's filing timely notwithstanding Robinson's forfeiture.

The district court's grant of summary judgment rested largely upon an evidentiary ruling that was, in turn, based on its conclusion that the District was not a party to this suit. Its evidentiary ruling was that Wilburn's only direct evidence of retaliation constituted inadmissible hearsay. *See* Mem. Op. at JA 34. The evidence consisted of Wilburn's description of a conversation she had with Graham, during which Graham reportedly told her "'straight up' that the reason . . . Robinson gave for not selecting [her] was [her] position on personnel actions that [she] had initiated for OHR in August 2002." Wilburn Decl. at JA 120. This statement plainly constitutes hearsay absent the applicability of an exemption or exception. *See* Fed. R. Evid. 801(c). Whether it is admissible as an admission of a party-opponent depends on whether or not the District is a party. *See* Fed. R. Evid. 801(d)(2)(D). The district court found Rule 801(d)(2)(D) inapplicable because Wilburn "filed suit only against Kelvin Robinson," not against the District—Graham's employer. *See* Mem. Op. at JA 34 (citing Compl. ¶¶ 1, 3 at JA 281).

We believe the district court erred in its finding. Wilburn's complaint names Robinson as a defendant both "Individually and [in] his Official Capacity." *See* Compl. at JA 281. A lawsuit against a government official in his official capacity is an action against the governmental entity of which the official is an agent. *See*, *e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Given the complaint's express reference to Robinson in his "Official Capacity," we conclude that the District is indeed a party to this lawsuit, which means that Wilburn's affidavit testimony about her conversation with Graham is admissible under Rule 801(d)(2)(D) as an admission of the District, a party defendant *vice* Robinson in his official capacity. Consequently, summary judgment should not have been granted on the ground

that Wilburn proffered no (or insufficient) evidence of retaliation. In light of the well-settled summary judgment standard that all evidence must be viewed in the light most favorable to the non-moving party and all reasonable inferences from that evidence drawn in the non-moving party's favor, *see*, *e*.*g*., *Shekoyan*, 409 F.3d at 422–23, Wilburn's direct evidence of retaliation—that is, Graham's statement to her—precluded summary judgment. We can, however, affirm a grant of summary judgment on alternative grounds, if applicable. *See*, *e*.*g*., *Wash.-Balt. Newspaper Guild, Local 35 v. Washington Post*, 959 F.2d 288, 292 n.3 (D.C. Cir. 1992) ("We have discretion to *uphold* a grant of summary judgment under a legal theory different from that applied by the district court, resting the affirmance on any ground that finds support in the record, particularly one raised before the district court." (emphasis in original)). We therefore proceed to the merits of Wilburn's First Amendment claim.

## III.

The speech of public employees enjoys considerable, but not unlimited, First Amendment protection. *See*, *e*.*g*., *O'Donnell v. Barry*, 148 F.3d 1126, 1133 (D.C. Cir. 1998). "A public official seeking to make out a claim of retaliation in violation of her First Amendment rights must meet a four-factor test." *Id*.; *see also Hall v. Ford*, 856 F.2d 255, 258 (D.C. Cir. 1988). First, the public employee must have spoken as a citizen on a matter of public concern. *See Garcetti v. Ceballos*, 126 S. Ct. 1951, 1958 (2006); *Tao v. Freeh*, 27 F.3d 635, 638–39 (D.C. Cir. 1994). "Second, the court must consider whether the governmental interest in 'promoting the efficiency of the public services it performs through its employees' . . . outweighs the employee's interest, 'as a citizen, in commenting upon matters of public concern' . . . ." *O'Donnell*, 148 F.3d at 1133 (quoting *Pickering*

*v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)). Third, the employee must show that her speech was "a substantial or motivating factor in prompting the retaliatory or punitive act." *Id.* Finally, the employee must refute the government employer's showing, if made, that it would have reached the same decision in the absence of the protected speech. *See id.* (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). "The first two factors . . . are questions of law for the court to resolve, while the latter are questions of fact ordinarily for the jury." *Tao*, 27 F.3d at 639.[13]

We first consider whether Wilburn spoke "as a citizen" on a public issue in asserting that differentiation between job applicants from inside and outside District government "violated the Human Rights Act and the United States Constitution" and intimating that the denial of the salaries she requested for her two subordinates was motivated by their race and gender. *See* Wilburn Decl. at JA 115; *Garcetti*, 126 S. Ct. at 1959–60; *Mills v. City of Evansville*, 452 F.3d 646, 647 (7th Cir. 2006)

---

[13]In moving for summary judgment below, Robinson assumed—without conceding—that the first two factors were not in issue, focusing instead on the evidence Wilburn proffered to support the third factor. *See* Mem. Op. at JA 34. In her complaint, however, Wilburn alleged that her salary discrimination claims were "on a matter of public concern" and thus constituted "speech that was entirely protected . . . under the First Amendment to the United States Constitution." Complaint ¶¶ 30, 31 at JA 289–90. Indeed, Wilburn's complaint suggests that her discrimination allegations involve matters of particular concern to the public because exposure of discrimination falls within her employment duties. *See infra* note 15. Robinson, too, submitted evidence regarding the OHR Director's duties, including exposure of discrimination. *See infra* p. 20; JA 234.

("*Garcetti* . . . holds that before asking whether the subject-matter of particular speech is a topic of public concern, the court must decide whether the plaintiff was speaking 'as a citizen' . . . ."). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 126 S. Ct. at 1960. *Garcetti* involved a state deputy district attorney, Richard Ceballos, who served as a calendar deputy. *Id*. at 1955. After a defense lawyer challenged an affidavit used to procure a search warrant, Ceballos investigated the facts underlying that affidavit and prepared a memorandum notifying his superiors of inaccuracies in the affidavit. *Id*. at 1955–56. Thereafter, Ceballos alleged, he was "reassign[ed] from his calendar deputy position . . ., transfer[red] to another courthouse, and deni[ed] . . . a promotion" in retaliation for speaking up about the affidavit. *Id*. at 1956. "According to Ceballos, it was not unusual for defense attorneys to ask calendar deputies to investigate aspects of pending cases." *Id*. at 1955. The Supreme Court emphasized this fact in concluding that Ceballos did not speak as a citizen in drafting the memorandum and thus his memorandum and later discussions with his supervisors did not enjoy First Amendment protection. Instead, Ceballos investigated the affidavit and "wrote his disposition memo because that is part of what he, as a calendar deputy, was employed to do." *Id*. at 1960. "When he went to work and performed the tasks he was paid to perform, Ceballos acted as a government employee. The fact that his duties sometimes required him to speak or write does not mean his supervisors were prohibited from evaluating his performance." *Id*. ("Official communications have official consequences . . . ."). "When a public employee speaks pursuant to employment responsibilities, . . . there is no relevant analogue

to speech by citizens who are not government employees." *Id.* at 1961. Ultimately, "[s]upervisors must ensure that their employees' official communications are accurate, demonstrate sound judgment, and promote the employer's mission," *id.* at 1960, and "the First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities," *id.* at 1961.[14]

In the wake of *Garcetti*, courts of appeals have denied First Amendment protection to government employee speech if the contested speech falls within the scope of the employee's uncontested employment responsibilities. For instance, in *Battle v. Board of Regents for Ga.*, 468 F.3d 755 (11th Cir. 2006), a public employee alleging retaliation for her exposing inaccuracy and fraud in a college's financial aid system "admitted that she had a clear employment duty to ensure the accuracy and completeness of student files as well as to report any mismanagement or fraud she encountered." *Id.* at 761. The court found the employee's speech unprotected by the First Amendment even though the exposure of fraud constituted an unusual aspect of the plaintiff's employment. *Id.* at 761 n.6 ("The issue in *Garcetti* was whether a public employee was speaking pursuant to an official duty, not whether that duty was part of the employee's everyday job functions."). In *Hill v. Borough of Kutztown*, 455 F.3d 225, 242 (3d Cir. 2006), the

---

[14]Although the Court acknowledged the importance of exposing governmental misconduct, it noted that a "powerful network of legislative enactments—such as whistle-blower protection laws and labor codes—[are] available to those who seek to expose wrongdoing." *Garcetti*, 126 S. Ct. at 1962. In light of these imperatives, the Court deemed public employees adequately protected "apart from the First Amendment." *Id.*

Third Circuit similarly found that the public employee's reports of harassment to the Borough Council lacked First Amendment protection. Specifically, the court noted that "Hill's complaint states that . . . *as part of his duties as Manager* . . . [he] duly reported [worker complaints]." *Id.* (emphasis in original).

Here, Wilburn's allegation of discrimination in DCOP's refusal to approve the salaries she requested easily falls within Wilburn's employment responsibilities. In fact, Wilburn described her responsibilities to include salary and hiring matters, asserting that "D.C. regulations gave [her] authority to handle all personnel matters in her agency," Compl. ¶ 17 at JA 286, and suggested that exposure of discriminatory government practices lay within her duties as "the Interim Director of the District of Columbia's Office of Human Rights," Compl. ¶ 30 at JA 290.[15] Moreover, the official description of the OHR Director's responsibilities includes "[s]ystematically identif[ying] and eliminat[ing] discriminatory practices in employment . . . in the District of Columbia." Position Description, *reprinted in* JA at 234; *see also* D.C. Code §§ 2-1411.01(a), 2-1411.02, 2-1411.03(2)–(3) (describing authority of OHR Director). Wilburn's statements regarding discrimination mirror the statements denied First Amendment protection in *Battle* and *Hill* because they were made by public employees expressly charged with exposing governmental

---

[15]Wilburn's complaint alleges that her statements were on "a matter of public concern" because they involved "possible disparate treatment of . . . two African American female[s] . . . and the possible discrimination and unconstitutional application of personnel rules . . . , particularly when one considers that [she] was the Interim Director of the District of Columbia's Office of Human Rights." Compl. ¶ 30 at JA 289–90.

misconduct.[16]  Indeed, Wilburn was hired not only to direct personnel matters in OHR but also to root out discrimination in the District government and, thus, when Wilburn commented on racial discrimination in the performance of her duties, she did not speak as a citizen.  Accordingly, the First Amendment does not "shield[] from discipline the expressions" Wilburn made "pursuant to [her] professional duties" and, because a public employee cannot claim "a constitutional cause of action behind [a] statement" made "in the course of doing his or her job," Wilburn cannot make out a claim of constitutional deprivation under 42 U.S.C. § 1983.  *Garcetti*, 126 S. Ct. at 1962 (rejecting § 1983 claim because plaintiff's speech not protected by First Amendment when uttered in performance of duty).

Because we conclude that Wilburn did not speak as a citizen, we do not reach the remaining factors to establish a retaliation claim.  Absent protected speech, there is no cognizable retaliation claim.  We therefore affirm the district court's grant of summary judgment to Robinson on the alternative ground that Wilburn has failed to "establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Wash.-Balt. Newspaper Guild, Local 35*, *supra*.

*So ordered.*

---

[16]In contrast, in *Tao* the public employee spoke as a citizen on a matter of public concern in alleging racial discrimination by the Federal Bureau of Investigation (FBI).  *See Tao*, 27 F.3d at 637.  In that case, the FBI employed the plaintiff as a Chinese language translator; exposing racial discrimination in the FBI's promotion process fell outside her employment responsibilities.  *Cf. id.* (describing appellant's duties as a translator).

BROWN, *Circuit Judge*, *dissenting*: The district court docketed an order ("the Order") and memorandum opinion granting summary judgment in favor of Robinson on June 30, 2005. Wilburn filed a Rule 60 motion for reconsideration ("the Motion") on July 18, eleven business days after the Order was docketed. The court denied the Motion on August 4, and Wilburn filed a notice of appeal ("the Notice") on August 10.

The Notice was therefore filed 41 days after the Order was docketed. Under both 28 U.S.C. § 2107(a) and Federal Rule of Appellate Procedure (FRAP) 4(a)(1)(A), the Notice should have been filed within thirty days of the Order. Section 2107 provides exceptions to this time limit, but none applies here. Similarly, FRAP 4(a)(4)(A)(vi) postpones the start of the thirty-day window if a motion for reconsideration is filed within ten days of entry of the order appealed from, but Wilburn did not file the Motion within that ten-day period. Thus, if we were to apply § 2107 and FRAP 4 strictly, we would necessarily find the Notice untimely and dismiss the appeal.

The threshold question is whether the appeal may nonetheless proceed. This seemingly straightforward inquiry has, as a result of the Supreme Court's per curiam decision in *Eberhart v. United States*, 126 S. Ct. 403 (2005), become somewhat opaque. Before *Eberhart*, Wilburn's violation of the letter of § 2107 and FRAP 4 would have been the end of the matter. After *Eberhart*, we must decide whether these deadlines are truly jurisdictional or rather merely claim-processing rules subject to forfeiture, and what effect such forfeiture would have on our jurisdiction. *See Eberhart*, 126 S. Ct. at 404; *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004). Because my view of the jurisdictional question differs from that of my colleagues, I respectfully dissent.

I

As noted, *Eberhart* holds various timeliness rules may be subject to forfeiture, 126 S. Ct. at 405–06, but it does not clarify precisely what effect forfeiture should have. The majority takes *Eberhart* to mean that if a party fails to object to a late filing, the filing is deemed timely for all purposes. I instead read *Eberhart* to say that if a party fails to object to a late filing, the court may entertain the filing, *its continuing untimeliness notwithstanding*. Under my reading of *Eberhart*, a post-judgment motion filed late remains late even given forfeiture of the untimeliness defense, and therefore it does not postpone the thirty-day period for filing an appeal, *see* FRAP 4(a)(4)(A). Moreover, I reach this conclusion whether the motion is late for all purposes, or, as here, merely late for purposes of the postponement provision in FRAP 4(a)(4)(A)(vi).

Recent Supreme Court precedent supports this approach to *Eberhart*. In *Day v. McDonough*, 126 S. Ct. 1675 (2006), the Court considered the procedural effects of a one-year limitation period on habeas corpus petitions contained in the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214. After *Day*, a habeas petition filed outside this time limit can put the district court in three very different positions, depending on the acts of the respondents. If the respondents actively invoke the time limit, the court must of course give it effect. Conversely, if the respondents actively waive the limitations defense, the district court "would not be at liberty" to apply the rule despite that choice. *Day*, 126 S. Ct. at 1684 n.11. But if the respondents merely *forfeit* the defense without intelligently waiving it, the district court has the *option* of whether to enforce the rule and hence dismiss the petition. *Id.* at 1684.

Here, based on Robinson's forfeiture of his untimeliness defense, the majority deems Wilburn's Motion sufficient to

postpone the start of the thirty-day period for filing an appeal. But if forfeiture of the untimeliness defense rendered late filings timely, then the district court in *Day* would have had no basis to dismiss the habeas petition. Thus, to be consistent with the logic of *Day*, we should reject the hypothesis that Wilburn's Motion postponed, under FRAP 4(a)(4)(A), the time for filing an appeal.

Courts applying *Eberhart* or *Kontrick* to time constraints have, to date, addressed only the permissibility of late filings, not the effect late filings would have on subsequent deadlines. *See, e.g.*, *Huerta v. Gonzales*, 443 F.3d 753 (10th Cir. 2006) (appeal to Board of Immigration Appeals); *First Ave. West Bldg., LLC v. James* (*In re OneCast Media, Inc.*), 439 F.3d 558 (9th Cir. 2006) (Rule 59(e) motion); *Amalgamated Transit Union Local 1309 v. Laidlaw Transit Servs., Inc.*, 435 F.3d 1140 (9th Cir. 2006) (petition for discretionary appeal); *United States v. Robinson*, 430 F.3d 537 (2d Cir. 2005) (motion for new trial); *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385 (4th Cir. 2004) (notice of Rule 11 motion). Such holdings are equally valid under both readings of *Eberhart* and thus cast no doubt on the reading I propose herein.

If we adopt my reading of *Eberhart*, application of the timeliness rules is very simple. FRAP 4(a)(4)(A) delays official entry of judgment only "[i]f a party *timely* files in the district court any of the [listed] motions." FRAP 4(a)(4)(A) (emphasis added). Thus, if a plaintiff files a Rule 59(e) motion late and the defendant does not object, the court may consider the Rule 59(e) motion, but the motion remains untimely and hence does not delay entry of judgment pursuant to FRAP 4(a)(4)(A). Similarly, a Rule 60 motion filed outside the ten-day time limit set forth in FRAP 4(a)(4)(A)(vi) would not postpone § 2107(a)'s thirty-day period for filing an appeal, even if the opposing party failed to raise a timeliness objection. This approach is thus consistent with *Moy v. Howard Univ.*, 843 F.2d 1504, 1506

(D.C. Cir. 1988) (per curiam), which calls for parallel treatment of Rule 59(e) and Rule 60 motions for purposes of applying FRAP 4(a).

## II

Wilburn filed the Motion more than ten business days after the Order was docketed. Therefore, the Motion does not trigger postponement under FRAP 4(a)(4)(A), and the Order is deemed "entered" for § 2107 purposes on June 30. As Wilburn filed the Notice more than thirty days later, § 2107 deprives us of jurisdiction.