**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERT B. POSEY,
            *Plaintiff-Appellant,*

v.

LAKE PEND OREILLE SCHOOL
DISTRICT NO. 84; BOARD OF
TRUSTEES, LAKE PEND OREILLE
SCHOOL DISTRICT NO. 84; JIM
SOPER, Building Principal, in his
individual and official capacities,
            *Defendants-Appellees.*

No. 07-35188

D.C. No.
CV05-272-N-EJL

OPINION

Appeal from the United States District Court
for the District of Idaho
Edward J. Lodge, District Judge, Presiding

Argued and Submitted
August 28, 2008—Seattle, Washington

Filed October 15, 2008

Before: Michael Daly Hawkins, M. Margaret McKeown, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Hawkins

14529

## COUNSEL

John M. West (presented argument and authored briefs), Bredhoff & Kaiser, Washington, D.C., for the plaintiff-appellant.

Mark D. Sebastian (presented argument) and Brian K. Julian (authored brief), Anderson, Julian & Hull, LLP, Boise, Idaho, for the defendants-appellees.

## OPINION

HAWKINS, Circuit Judge:

This case requires us to determine whether, following the Supreme Court's recent decision in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), the inquiry into the protected status of speech in a First Amendment retaliation claim remains a question of law properly decided at summary judgment or instead now presents a mixed question of fact and law.

Plaintiff Robert Posey sued Lake Pend Oreille School District No. 84 (the "School District"), arguing that by eliminating his job, the School District retaliated for his prior speech, in violation of the First and Fourteenth Amendments to the United States Constitution. The district court granted summary judgment in favor of the School District, concluding— purely as a matter of law—that the speech in question had been spoken pursuant to Posey's job responsibilities and thus in his capacity as a public employee, and that it was therefore not constitutionally protected. Posey appeals. We have jurisdiction under 28 U.S.C. § 1291.

We conclude that, following *Garcetti*, the inquiry into whether a public employee's speech is protected by the First Amendment is no longer purely legal and presents a mixed question of fact and law. Summary judgment is therefore inappropriate where, as here, (1) plaintiff has spoken on a matter of public concern, (2) the state lacks an adequate justification for treating the employee differently from any other member of the general public, and (3) there is a genuine and material dispute as to the scope and content of plaintiff's employment duties. Accordingly, we reverse the grant of summary judgment on Posey's First Amendment retaliation claim and remand to the district court for further proceedings consistent with this opinion.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

*A.  Factual Background*

Posey, an employee of the School District assigned as a "security specialist" to Sandpoint High School, believed the School District's safety and emergency policies were inadequate. In November 2002, Posey met with Sandpoint Principal Jim Soper to express his concerns about student discipline and safety issues, including ongoing drug and weapons violations and Posey's feeling that his hands were tied in enforcing school policies. Soper did not respond directly to Posey's expression of concern, and Posey became increasingly uneasy about security and safety issues throughout the following school years.

Posey's disquiet eventually led him, in October 2003, to compose and deliver a lengthy letter to School District Chief Administrative Officer Steve Battenschlag, with whom Posey had a friendly relationship. The letter was copied to Superintendent Mark Berryhill and two other school administrators, Kathy Chambers and Todd Reed. It complained in general and specific terms about both personal grievances and what Posey perceived to be inadequate safety and security policies at the high school. With respect to personal grievances, the letter complained that Principal Soper had dealt with Posey "poorly" and occasionally in "an angry, threatening manner." It acknowledged that Posey had "been fighting with the new administration for over a year now" because, in Posey's view, the administration's "new philosophy is to keep me out of everything except for parking and lost and found."

The bulk of the letter, however, addressed Posey's concerns about inadequate safety and security policy and enforcement at the school. Posey hoped his letter would prompt the school district to "correct the problems before someone gets seriously hurt." The letter specifically detailed concerns about: (1) the administration's general unresponsiveness to safety

problems, (2) inadequate staff and faculty training, (3) concealment and insufficient documentation of safety violations, (4) ineffective enforcement of truancy policies, (5) ineffective enforcement of sexual harassment policies, and (6) inadequate fire safety and school evacuation planning.

Each of these concerns was substantiated by at least one specific example, including Posey's recollection of students bringing weapons to school, student intoxication, sexual harassment and possibly rape among school staff, persistent student truancy, and failure to evacuate the building when there had been smoke in the hallways and the fire alarm had gone off. Posey also stated his concern that the Columbine school shootings "can happen here and almost did," alleging that the administration's failure to update safety and emergency policies "is not right" and "is plain negligence." Following delivery of the letter to Battenschlag, Posey met with Battenschlag and Berryhill at Posey's home, outside of school hours, to discuss his concerns.

The parties do not dispute that Posey wrote the letter at home, with his own resources, on his own time, and of his own initiative. The letter was written on plain paper and casually addressed to "Steve." The parties also do not dispute that Posey's workplace resources were inconsistent with his having written the letter on school premises.

The parties do dispute, however, whether Posey wrote the letter as part of his official employment responsibilities. The evidence indicates that Posey was initially hired in 1995 as a "parking lot attendant" for Sandpoint High School. His job title changed periodically throughout his subsequent nine years of employment for the District. Some time before 2002, Posey's title was changed to "Security Specialist." In that role, Posey was initially responsible for twenty enumerated tasks relating to preventing and responding to student misconduct.

In 2002, however, Principal Soper substantially reduced Posey's job responsibilities. Posey was relieved of responsibility for all specified tasks except assisting with security and crime prevention, and supervising the school parking lot, grounds, and hallways. Posey had been but was no longer responsible for liaising with police, enforcing truancy policies, searching students, and investigating student misconduct.

The parties specifically dispute whether Posey had any policy-making responsibility or authority to support a conclusion that Posey's letter "was required as a part of [his] official duties," *Marable v. Nitchman*, 511 F.3d 924, 932 (9th Cir. 2007). In 2002, for instance, Soper instructed Posey to "update" the school's emergency plan. Posey subsequently submitted a "document" updating the plan. The School District therefore insists that Posey "provided reports and information about security matters at the high school" as "an inherent part of his duties" and characterizes his letter as an "internal communication" that "ar[ose] as part of [his] job duties."

Posey counters that no aspect of his job description required him to "report[ ] wrongdoing by administrators or co-workers" and that "his role in student discipline did not extend beyond discrete tasks such as ensuring that the parking lot remained orderly at the end of the school day." Indeed the record indicates, by Soper's own admission, that responsibility for updating the emergency plan was reassigned in part "[b]ecause Mr. Posey was not in full charge of those issues."[1]

---

[1]Adding to the confusion surrounding Posey's job responsibilities, the parties' characterizations appear to have shifted in the time between their depositions and the identification of the relevant legal questions at issue in this case. Principal Soper, for instance, indicated in 2006 that Posey "was very good at coordinating the parking lot . . . . but as far as the actual security of it, not really, he didn't have a lot to do with that." And around the same time, Posey insisted that ensuring student safety and security "was my job description [and] was a function of my job." In their briefing before this court, each party has made a resolute 180-degree turn in their respective characterizations of Posey's duties.

At the conclusion of the 2003-04 school year, Posey was informed that the School District would be combining his job responsibilities as security specialist with three other employees' responsibilities, in a new consolidated "preventative specialist" position. Posey applied but was not hired for the position. He filed a grievance with the School District, which initially determined that he had been retaliated against for his letter to Battenschlag. The District's governing board subsequently overrode that determination and refused to hire Posey.

## B.   Proceedings Below

Posey filed suit under 42 U.S.C. § 1983 in Idaho state court asserting, in addition to a range of state law claims, that the District's elimination of his position and failure to rehire him in the newly consolidated position constituted retaliation for his letter to Battenschlag and subsequent meeting with Battenschlag and Berryhill, in violation of the First and Fourteenth Amendments. The School District removed the case to the Federal District Court for the District of Idaho pursuant to 28 U.S.C. § 1446.

Following discovery, the School District moved for summary judgment, arguing that Posey's speech was not protected by the First Amendment because his "statements were made pursuant to his duties" in his role as "Security Specialist." Granting the motion, the district court concluded that Posey had not communicated his concerns regarding school security and safety issues to the newspapers or his legislators and that his speech had stemmed from activities that he was paid to do. Because, in the district court's view, Posey had not spoken as a private citizen, it granted summary judgment in favor of the School District on Posey's First Amendment retaliation claim. The court remanded Posey's remaining state law claims to the Idaho state court. Posey now appeals the grant of summary judgment.

## II.   STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*. *Suzuki Motor Corp. v. Consumers Union of United States, Inc.*, 330 F.3d 1110, 1131 (9th Cir. 2003). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Because this appeal is taken from an order of summary judgment in favor of the School District, " '[t]he evidence of [Posey] is to be believed, and all justifiable inferences are to be drawn in his favor.' " *Garcetti*, 547 U.S. at 442 n.13 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## III.   DISCUSSION

*A.   The Protected Speech Inquiry after* Garcetti

**[1]** In order to sustain a First Amendment retaliation claim, a public employee must show "(1) [t]he employee engaged in constitutionally protected speech, (2) the employer took adverse employment action against the employee, and (3) the employee's speech was a 'substantial or motivating' factor in the adverse action." *Freitag v. Ayers*, 468 F.3d 528, 543 (9th Cir. 2006) (citing *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003)).

Until recently, the first element of this test required the court to determine as a matter of law (1) whether the speech at issue " 'touch[ed] on a matter of public concern,' " and if so, (2) whether " 'the interests of the [employee], as a citizen, in commenting upon matters of public concern [outweighed] the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Dible v. City of Chandler*, 515 F.3d 918, 926 (9th Cir. 2008) (quoting *City of San Diego v. Roe*, 543 U.S. 77, 82-83 (2004)) (some internal quotations omitted).

If a court determined that the speech at issue in any given case failed to raise a matter of public concern sufficient to outweigh the state's interest in efficient operation, then the speech was not protected and a jury did not need to resolve the factual questions presented by the second and third elements of the test. This two-stage inquiry into the protected status of the speech was purely legal and therefore properly decided on summary judgment. *See Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983) ("The inquiry into the protected status of speech is one of law, not fact.").

*Garcetti*, however, added a third stage to the first element of the First Amendment retaliation test, requiring a determination whether the plaintiff spoke as a public employee or instead a private citizen. The plaintiff in *Garcetti*, Deputy District Attorney Ceballos, had been assigned to review a case in which the police had allegedly filed an inaccurate affidavit to obtain a search warrant. 547 U.S. at 413-14. Concluding the affidavit contained serious misrepresentations, Ceballos submitted to his superiors a memorandum stating his findings and recommending dismissal of the case. *Id*. at 414. The district attorney nevertheless proceeded with the prosecution. *Id*. When Ceballos was subsequently reassigned, transferred, and passed over for a promotion, he filed suit claiming that his supervisors had violated his First Amendment rights in retaliation for the memo. *Id*. at 415.

**[2]** There, the Supreme Court concluded that when a public employee speaks pursuant to his or her official duties, as Ceballos did, the speech is not protected because any restriction on that speech "simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Id*. at 422. The Court distinguished "work product" that "owes its existence to [an employee]'s professional responsibilities" from "contributions to the civic discourse," which "retain the prospect of constitutional protection" for the speaker. *Id.* at 421-22. Because Ceballos's preparation of the memo "fell within the scope of his job responsibilities"—

because it was written in his capacity as employee and not citizen—the memo itself fell outside the sphere of First Amendment protection. *Id*. at 422.

**[3]** But in *Garcetti* there was no dispute that Ceballos's internal memorandum had been written in execution of Ceballos's official employment responsibilities. *Id*. at 424 ("[T]he parties in this case do not dispute that Ceballos wrote his disposition memo pursuant to his employment duties."). Thus the Court had "no occasion to articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate." *Id*.

Here there is room for precisely such debate regarding whether Posey wrote and delivered his letter in execution of his official employment duties.[2] Given the factual disputes presented in the record, we must therefore determine whether the inquiry into the protected status of speech remains one purely of law as stated in *Connick*, or if instead *Garcetti* has transformed it into a mixed question of fact and law.

Our sister circuits are split over the resolution of this question. In *Charles v. Grief*, 522 F.3d 508 (5th Cir. 2008), for example, the magistrate judge had concluded that the question whether Charles's statements were made in his capacity as a citizen or an employee presented a genuine issue of material fact requiring trial. *Id.* at 513 n.17. On appeal, however, the Fifth Circuit disagreed, concluding that "even though analyzing whether *Garcetti* applies involves the consideration of factual circumstances surrounding the speech at issue, the question whether Charles's speech is entitled to protection is

---

[2]We have twice considered First Amendment retaliation claims after *Garcetti*. *See Marable*, 511 F.3d 924; *Freitag*, 468 F.3d 528. We concluded that statements are made in the speaker's capacity as citizen if the speaker "had no official duty" to make the questioned statements, *Marable*, 511 F.3d at 932-33, or if the speech was not the product of " 'perform[ing] the tasks [the employee] was paid to perform,' " *Freitag*, 468 F.3d at 544 (quoting *Garcetti*, 547 U.S. at 422).

a legal conclusion properly decided at summary judgment." *Id*.

The Tenth Circuit has also concluded that "[all] three steps" of the inquiry into the protected status of speech, including the "determin[ation] whether the employee [has spoken] pursuant to [his] official duties," "are to be resolved by the district court [and not] the trier of fact." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202-03 (10th Cir. 2007). There, despite a dispute among the parties, the court found at summary judgment that some of the plaintiffs' speech had been made pursuant to their employment duties and some had not. *Id*. at 1204.

The District of Columbia Circuit has also held, following *Garcetti*, that the question whether a plaintiff "ha[s] spoken as a citizen on a matter of public concern" is a "question[ ] of law for the court to resolve," and not a "question[ ] of fact ordinarily for the jury." *Wilburn v. Robinson*, 480 F.3d 1140, 1149 (D.C. Cir. 2007) (internal quotation omitted) (going on to affirm summary judgment because, on review of the evidence of plaintiff's alleged but apparently disputed employment duties, the speech "easily" fell within the plaintiff's job responsibilities).

In conflict with the Fifth, Tenth, and D.C. Circuits, the Third Circuit has "held that 'whether a particular incident of speech is made within a particular plaintiff's job duties is a mixed question of fact and law.' " *Reilly v. City of Atlantic City*, 532 F.3d 216, 227 (3d Cir. 2008) (quoting *Foraker v. Chaffinch*, 501 F.3d 231, 240 (3d Cir. 2007)). In *Foraker*, the Third Circuit considered a First Amendment retaliation case that had already gone to trial. The court applied "clear error" review to the factual finding that the plaintiffs' speech had been "made pursuant to employment duties." *Foraker*, 501 F.3d at 250 (Pollak, J., concurring).

The Seventh Circuit has implicitly sided with the Third Circuit, concluding in *Davis v. Cook County*, 534 F.3d 650 (7th Cir. 2008), that summary judgment was appropriate because "no rational trier of fact could find" that Davis's speech had been made in her capacity as a private citizen. *Id.* at 653. And, prior to *Garcetti*, the Eighth Circuit had already concluded (with respect to the second element, requiring the balancing of interests between the individual and the state[3]) that "any underlying factual disputes concerning whether the speech at issue [is] protected should [be] submitted to the jury." *Casey v. City of Cabool*, 12 F.3d 799, 803 (8th Cir. 1993) (citing *Shands v. City of Kennett*, 993 F.2d 1337, 1342 (8th Cir. 1993)).[4]

---

[3]The circuits are also split on the question whether the balancing inquiry is an issue of law or fact. *See Weaver v. Chavez*, 458 F.3d 1096, 1101 (10th Cir. 2006) (recognizing the circuit split). For example, compare *Johnson v. Ganim*, 342 F.3d 105, 114-15 (2d Cir. 2003) ("factual disputes pertaining to the potential for disruption and defendants' motivations in suspending and terminating plaintiff" are issues which "would properly be regarded as a question of fact, to be answered by the jury prior to the district court's application of the *Pickering* balancing test" (quotations omitted)), and *Belk v. City of Eldon*, 228 F.3d 872, 881 (8th Cir. 2000) ("Although the balancing of interests is a matter of law for the district court, the underlying factual questions should be submitted to the jury, generally through interrogatories or a special verdict form."), with *Joyner v. Lancaster*, 815 F.2d 20, 23 (4th Cir. 1987) (holding that the balancing inquiry presented questions which "were not factual issues for the jury," but "involved questions of constitutional law for the court" and therefore that the "jury had no role to play"). This case does not present an occasion for us to enter this additional, albeit related, fray.

[4]In the face of this conflict, district courts within this circuit have also reached conflicting decisions. *Compare, e.g.*, *Neveu v. City of Fresno*, No. CV-F-04-6490, 2007 WL 2330775, at *3 (E.D. Cal. 2007) (concluding that "[t]he inquiry into the protected status of speech," including whether speech was made pursuant to job responsibilities, "is one of law, not fact" and going on to grant summary judgment despite apparent factual dispute regarding job responsibilities (internal quotation marks omitted)) *with, e.g.*, *Shewbridge v. El Dorado Irrigation Dist.*, No. CIV. S-05-0940, 2006 WL 3741878, at *7 (E.D. Cal. 2006) (declining to grant summary judgment "because there are factual issues about whether plaintiff's job responsibilities included the obligation to report wrongdoing by the dis-

**[4]** Upon consideration, we agree with the Third, Seventh, and Eighth Circuits and hold that the determination whether the speech in question was spoken as a public employee or a private citizen presents a mixed question of fact and law.

**[5]** Although the Supreme Court has previously recognized "the vexing nature of the distinction between questions of fact and questions of law," *Pullman-Standard v. Swint*, 456 U.S. 273, 288 (1982) (citing *Baumgartner v. United States*, 322 U.S. 665, 671 (1944)), and characterized the distinction as "elusive," *Miller v. Fenton*, 474 U.S. 104, 113 (1985), it has also offered some guidance. Facts that can be "found" by "application of . . . ordinary principles of logic and common experience . . . are ordinarily entrusted to the finder of fact." *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 501 n.17 (1984). As the present case demonstrates, the scope and content of a plaintiff's job responsibilities can and should be found by a trier of fact through application of these principles. The *Garcetti* Court itself seems to have anticipated as much when it explained that "[t]he proper inquiry is a practical one," requiring more than mere mechanical reference to "[f]ormal job descriptions[, which] often bear little resemblance to the duties an employee actually is expected to perform." *Garcetti*, 547 U.S. at 424-25.

Because the task of determining the scope of a plaintiff's job responsibilities is concrete and practical rather than abstract and formal, we are confident that a factual determination of a plaintiff's job responsibilities will not encroach upon the court's prerogative to interpret and apply the relevant

trict either internally to his supervisors or externally to other agencies"). *See also Clarke v. Multnomah County*, No. CV-06-229, 2007 WL 915175, at *12 (D. Or. 2007) (stating that "[w]hether particular speech qualifies for constitutional protection is a question of law" but nevertheless concluding that summary judgment was appropriate because "no reasonable juror could conclude anything but all of plaintiff's communications regarding the four subject areas, were pursuant to her official job duties").

legal rules. "An issue does not lose its factual character merely because its resolution is dispositive of the ultimate constitutional question," *Miller*, 474 U.S. at 113, and this is not a situation in which the fact-finding process has any potential to "cross[ ] the line . . . into the realm of a legal rule upon which the reviewing court must exercise its own independent judgment," *Bose Corp.*, 466 U.S. at 501 n.17. Indeed, although a fact-finder's determination as to a plaintiff's job responsibilities may at times appear in itself dispositive of the protected status inquiry, the "rule of independent review" will always require the court independently to evaluate the ultimate constitutional significance of the facts as found. *Id.* at 500-01.

**[6]** Accordingly, we conclude that the third element of the protected status inquiry—whether the plaintiff spoke as a public employee or a private citizen—is a mixed question of fact and law. We further conclude that the pleadings and evidence in this case present genuine disputes of material fact regarding the scope and content of Posey's job responsibilities.

## B. The Content of Posey's Letter and the School District's Justification for Adverse Employment Action

Determining that there are genuine disputes of material fact as to Posey's employment duties does not necessarily mean, however, that the grant of summary judgment was improper. If Posey's letter and subsequent meeting were to fail either of the other two elements of the protected status inquiry, then summary judgment would have been appropriate on these alternate grounds. We conclude, however, that Posey's speech did raise matters of public concern and, as the School District has already conceded, there was no "adequate justification for treating [him] differently from any other member of the general public." *Garcetti*, 547 U.S. at 418 (citing *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968)).

**[7]** " '[C]ommunication on matters relating to the functioning of government . . .' [such as] misuse of public funds, wastefulness, and inefficiency in managing and operating government entities are matters of inherent public concern," regardless of the purpose for which they are made. *Johnson v. Multnomah County, Or.*, 48 F.3d 420, 425 (9th Cir. 1995) (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983) (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575 (1980) (plurality opinion))). Here, there is little doubt that Posey's assertions about the inadequacy and inefficacy of school security and safety policies were " 'relevan[t] to the public's evaluation of the performance of' " the school's administration. *Freitag*, 468 F.3d at 545 (quoting *Coszalter*, 320 F.3d at 973-74).[5] Principal Soper's alleged failure to address Posey's initial expressions of concern is therefore "undoubtedly of great public interest" in itself, but "the *specific allegations* in this case [are particularly] matter[s] of acute concern to the entire community." *Id.* (emphasis added). School staff members presumably come into contact with students on a daily basis. Whether they have committed acts of sexual harassment or rape certainly is of "grave concern," *id.* at 545, to the parents of those students. So too is whether fires had occurred in school buildings without proper student evacuation, and whether students had brought deadly weapons onto school premises and threatened the lives of staff members. These matters would be of great importance to any community concerned with the safety of its school children. Posey's letter thus was unquestionably "relate[d] to . . . issue[s] of 'political, social, or other concern to

---

[5]That a portion of Posey's letter addressed personal grievances is not relevant. In *Connick*, the Supreme Court considered whether an internal questionnaire prepared by the plaintiff raised a matter of public concern, concluding it was sufficient for First Amendment purposes that only "one of the questions in Myers' survey touched upon a matter of public concern." 461 U.S. at 149. We therefore agree with the Sixth Circuit that statements presenting "mixed questions of private and public concern" properly fall within the scope of First Amendment protection. *See Bonnell v. Lorenzo*, 241 F.3d 800, 812 (6th Cir. 2001).

the community' " sufficient to satisfy the First Amendment. *Gilbrook v. City of Westminster*, 177 F.3d 839, 866 (9th Cir. 1999) (quoting *Connick*, 461 U.S. at 146-47).

**[8]** There is also no dispute that the School District lacked "an adequate justification for treating the employee differently from any other member of the general public," *Garcetti*, 547 U.S. at 418 (citing *Pickering*, 391 U.S. at 568). Indeed, the School District conceded below that none of Posey's statements adversely affected the School District's mission or impinged on the efficiency of its operations.

## CONCLUSION

Agreeing with the Third, Seventh, and Eighth Circuits, we hold that after *Garcetti* the inquiry into the protected status of speech presents a mixed question of fact and law, and specifically that the question of the scope and content of a plaintiff's job responsibilities is a question of fact.

**[9]** District courts should therefore determine **first** whether "the expressions in question were made by the speaker ' . . . upon matters of public concern,' " *Garcetti*, 547 U.S. at 416 (quoting *Connick*, 461 U.S. at 146-47), and **second** whether the state lacked "adequate justification for treating the employee differently from any other member of the general public," *id*. at 418 (citing *Pickering*, 391 U.S. at 568). "If the answer [to both questions] is yes, then the *possibility* of a First Amendment claim arises." *Id*. at 418 (emphasis added).

**[10]** After having answered each affirmatively, only then should the court consider whether the plaintiff spoke as a private citizen or a public employee. But when there are genuine and material disputes as to the scope and content of the plaintiff's job responsibilities, the court must reserve judgment on this third prong of the protected status inquiry until after the fact-finding process.

**[11]** Here, Posey spoke on matters of public concern, and the School District lacked adequate justification to treat him differently from other citizens. Because there are genuine disputes of material fact regarding his job responsibilities, we **REVERSE** the grant of summary judgment and **REMAND** the case to the district court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**