*70 MEMORANDUM **
Plaintiff Richard Robinson (“Robinson”), a sergeant with the Los Angeles County-Office of Public Safety (“OPS”), filed a civil rights complaint under 42 U.S.C. § 1983 against the County of Los Angeles (“Los Angeles”) and several OPS officers (“Defendants”) alleging that he was denied promotion in violation of his First and Fourteenth Amendment rights because he made reports of misconduct within his department. Defendants moved for summary judgment, arguing that Robinson’s reports were not protected speech because they were made as part of his professional duties or because he failed to present the reports through the chain of command as required by written department policy. The district court denied the motion, finding “genuine issues of material fact” on the scope of Robinson’s job duties and holding that a violation of a written chain of command policy was not dispositive, but was merely one of the factors to be considered as part of the balancing test established in Pickering v. Bd. of Educ., 391 U.S. 563, 571, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).
Although a district court’s denial of summary judgment based on qualified immunity is subject to immediate appeal as a collateral order, the scope of appellate jurisdiction is limited to questions of law. Moran v. Washington, 147 F.3d 839, 843 (9th Cir.1998) (citing Mitchell v. Forsyth, 472 U.S. 511, 528 & n. 9, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)) (“A public-official defendant may appeal the ‘purely legal’ issue ‘whether the facts alleged ... support a claim of [violation of] clearly established law.’”). A defendant may not “appeal a district court’s summary judgment order insofar as that order determines whether the pretrial record sets forth a ‘genuine’ issue of fact for trial.” Johnson v. Jones, 515 U.S. 304, 319-20, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995).
A First Amendment claim against a public employer must establish: (1) engagement in constitutionally protected speech, (2) an adverse employment action, and (3) the employee’s speech was a ‘substantial or motivating’ factor in the adverse action. Freitag v. Ayers, 468 F.3d 528, 543 (9th Cir.2006). At this stage, Defendants challenge only the conclusion that Robinson’s allegations could support a finding that he engaged in constitutionally protected speech under clearly established law.
When evaluating whether an employee’s speech is constitutionally protected, courts must “determine first whether the expressions in question were made by the speaker ... upon matters of public concern, ... second whether the state lacked adequate justification for treating the employee differently from any other member of the general public,” and third “whether the plaintiff spoke as a private citizen, [rather than] a public employee.” Posey v. Lake Pend Oreille Sch. Dist. No. 84, 546 F.3d 1121, 1130-31 (9th Cir.2008) (citations omitted).
Even where an employee did engage in constitutionally protected speech, a qualified immunity summary judgment motion requires courts to decide whether the rights the plaintiff claims were “clearly established at the time of the alleged deprivations,” viewing “the disputed facts in the light most favorable to [the plaintiff].” Brewster v. Bd. of Educ., 149 F.3d 971, 976-977 (9th Cir.1998).

Public Concern

To be protected under the First Amendment, an employee’s speech must *71 address “a matter of legitimate public concern.” Pickering, 391 U.S. at 571, 88 S.Ct. 1731. “[T]he competency of the police force is surely a matter of great public concern.” McKinley v. City of Eloy, 705 F.2d 1110, 1114 (9th Cir.1983). Only speech that deals with “individual personnel disputes and grievances” and that would be of “no relevance to the public’s evaluation of the performance of governmental agencies” is generally not of “public concern.” Id.
Robinson alleges he was retaliated against for, among other things, testifying in a class action lawsuit that the County had engaged in systematic discrimination and harassment against OPS officers, reporting numerous instances of possible corruption, discrimination, or misconduct by fellow OPS officers, and following up on those complaints. With the exception of the three incidents identified by the district court as individual personnel disputes, each of these is clearly a “matter of public concern.” See Thomas v. City of Beaverton, 379 F.3d 802, 809 (9th Cir.2004) (“Unlawful conduct by a government employee or illegal activity within a government agency is a matter of public concern.”); Johnson v. Multnomah County, 48 F.3d 420, 425 (9th Cir.1995) (citing Roth v. Veteran’s Admin., 856 F.2d 1401, 1405 (9th Cir.1988)) (The “misuse of public funds, wastefulness, and inefficiency in managing and operating government entities are matters of inherent public concern.”); see also Connick v. Myers, 461 U.S. 138, 148, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) (speech merits stronger protection when employee seeks “to bring to light actual or potential wrongdoing or breach of public trust”).
Defendants concede that some of Robinson’s “internal reports of certain alleged misconduct involved matters of public concern,” but contend that others did not. They argue that Robinson’s follow-up communications pressing his reports of misconduct are not “matters of public concern,” citing Douglas v. Lexington-Fayette Urban County Gov’t, 2007 WL 3355481, at *6, 2007 U.S. Dist. LEXIS 82818, at *18 (E.D.Ky. Nov. 7, 2007), which held that plaintiffs’ complaints are not matters of public concern where they are “about the job performance of their coworkers” and “the intent of the plaintiffs [is] not to protect public safety, but rather to complain about the management’s response to the situation.”[1]
Construing the facts in the light most favorable to Robinson, his complaints, unlike those of the plaintiffs in Douglas, did not merely contain “passing references to public safety [that] were ‘incidental to the message conveyed,’ ” id., but rather were motivated by the danger the misconduct posed and the need to respond to it. Whether OPS treats complaints of misconduct seriously or fails to followup is also a matter of “relevance to the public’s evaluation of the performance of governmental agencies” and consequently a matter of public concern. Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir.2003).
Defendants suggest that Robinson’s reports — regarding an officer suspected of working for an outside employer while on the clock and alleged discrimination against another officer — both addressed individual personnel disputes, not matters of public concern. Reports pertaining to others, even if they concern personnel matters including discriminatory conduct, *72 can still be “protected under the public concern test.” Thomas, 379 F.3d at 808 (explaining that though employee’s speech “concerned a personnel matter, it did not pertain to [her] own job status”); see also Alpha Energy Savers, Inc. v. Hansen, 381 F.3d 917, 926 (9th Cir.2004) (holding “invidious discrimination” inherently a matter of public concern “whether it consists of a single act or a pattern of conduct”); Cochran v. City of Los Angeles, 222 F.3d 1195, 1201 (9th Cir.2000) (“Although focused on one employee and not addressed directly to the public, the speech here did concern matters which are relevant to the public’s evaluation of its police department.”).
Robinson’s testimony in a class action against the County is also of public concern, regardless of whether it had an impact on the result of that litigation. Id. at 927 (“[A] public employee’s testimony addresses a matter of public concern if it contributes in some way to the resolution of a judicial or administrative proceeding in which discrimination or other significant government misconduct is at issue — even if the speech itself would not ... in isolation.”).

Adequate Justiñcation

Courts must also seek to balance the interests of the employee, “in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.” Pickering, 391 U.S. at 568, 88 S.Ct. 1731. “For us to find that the government’s interest as an employer in a smoothly-running office outweighs [an employee’s] first amendment right, defendants must demonstrate actual, material and substantial disruption,” or “reasonable predictions of disruption.” Roth, 856 F.2d at 1407; Waters v. Churchill, 511 U.S. 661, 673, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994); see also Keyser v. Sacramento City Unified Sch. Dist., 265 F.3d 741, 749 (9th Cir.2001) (noting that “a showing of actual disruption will weigh more heavily”). “[T]he workplace disruption hurdle for government employers is higher in cases, like this one, where the speech involved unlawful activities rather than policy differences.” Key-ser, 265 F.3d at 749 (citing Moran, 147 F.3d at 849 n. 6).
Ninth Circuit cases applying Pickering to an “employee’s reports of “wastefulness, mismanagement, unethical conduct, violations of regulations, and incompetence’ ” to his supervisor hold “that the public’s interest in learning about illegal conduct by public officials and other matters at the core of First Amendment protection outweighs a state employer’s interest in avoiding a mere potential disturbance to the workplace.” Keyser, 265 F.3d at 747-48 (discussing Gilbrook v. City of Westminster, 177 F.3d 839, 867-70 (9th Cir. 1999); Roth, 856 F.2d at 1403-08; and Johnson, 48 F.3d at 425-27). In the context of “good-faith whistleblowing” involving reports within a government department rather than to the public, “the breadth of one’s audience is irrelevant” because “[i]t would be absurd to extend First Amendment protection only to those whistleblowers who immediately appear on the local news.” Hufford v. McEnaney, 249 F.3d 1142, 1150 (9th Cir.2001).

Chain of Command

Defendants argue an exception to this clearly established law exists, citing Sanchez v. City of Santa Ana, 936 F.2d 1027, 1039 (9th Cir.1990), which states that there is “no constitutional violation in requiring officers to communicate ‘through channels’ before enlisting public opinion to their cause.” Sanchez limited its holding, however, to cases where the “channels” policy “is reasonable and not arbitrary.” Id. “[E]ven in a police department, the complained-of disruption must be ‘real, [and] *73 not imagined’ ” and the “disruption exception cannot ‘serve as a pretext for stifling legitimate speech or penalizing public employees for expressing unpopular views.’ ” Allen v. Scribner, 812 F.2d 426, 432 (9th Cir.1987) (citing McKinley, 705 F.2d at 1115); accord Brockell v. Norton, 732 F.2d 664, 667 (8th Cir.1984) (courts cannot “decide in the abstract, however, that a chain-of-command policy designed to protect [a police department’s] interest[s] will always take precedence over the interest of a public employee in open communication” and “must look to the particular circumstances of each case to determine the importance of enforcing the chain of command against an employee whose speech breaches that policy”).
The Pickering balancing test can favor protected speech even where the speech violates the employer’s written policy requiring speech to occur through specified “channels.” Anderson v. Central Point School Dist., 746 F.2d 505, 506 (9th Cir. 1984); see also Connick, 461 U.S. at 153 n. 14, 103 S.Ct. 1684 (violation of a rule governing the circumstances when speech is permitted would strengthen a claimant’s position in the Pickering balance, but alone would not be dispositive).
Defendants correctly note that we have sometimes found a police department’s interests in discipline and esprit de corps to outweigh First Amendment interests, but even in these cases, the Pickering balancing was not conducted while genuine issues of material fact (including the extent of the workplace disruption) remained. See, e.g., Cochran, 222 F.3d at 1196 (finding the city’s interest in the proper functioning of its police department outweighed plaintiffs’ expressive interests, but only after a detailed discussion of the facts as found at trial); Kannisto v. San Francisco, 541 F.2d 841, 843-44 (9th Cir.1976) (noting that “[t]he facts in this case sharply contrast with those in Pickering ”).
Therefore, although the existence of a written “chain of command” policy may be relevant to evaluating workplace disruption, it is not dispositive, particularly given the allegations suggesting that Robinson’s superiors may have been more concerned with the frequency with which Robinson reported misconduct than the persons to whom he directed those reports. When the Pickering test must be applied and “there are underlying factual issues regarding the extent of office disruption,” it is proper to deny a motion for summary judgment. Roth, 856 F.2d at 1408.

Scope of Job Duties

Defendants also argue that Robinson’s reports were made in conjunction with his official job duties and therefore were not protected by the First Amendment under Garcetti v. Ceballos, 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). The district court found that whether the scope of Robinson’s duties included reporting police misconduct was contested and presented a “genuine issue of material fact for trial,” a holding we lack jurisdiction to review. See Johnson, 515 U.S. at 319-20, 115 S.Ct. 2151. In so concluding, the district court noted that the message that Robinson should make fewer misconduct reports, which he claims he repeatedly received from his supervisors, “tends to undermine the assertion by Defendants that the reports Robinson made were within the scope of his duties unless one is to believe that certain duties must not be performed if one wants to advance in the organization.”
Although OPS policy states that an OPS member “shall promptly report to his immediate supervisor any information or incident coming to his attention that might indicate the need for Office of Public Safety actions,” formal job requirements are *74 not dispositive. Garcetti rejected “the suggestion that employers can restrict employees’ rights by creating excessively broad job descriptions,” holding that formal job descriptions are “neither necessary nor sufficient to demonstrate that conducting [a] task is within the scope of the employee’s professional duties.” Garcetti 547 U.S. at 424-25, 126 S.Ct. 1951. Garcetti therefore demands a “practical” inquiry. Id.
Under Ninth Circuit precedent, the scope of Robinson’s job duties is a question of fact. Posey, 546 F.3d at 1130. “[W]hen there are genuine and material disputes as to the scope and content of the plaintiffs job responsibilities, the court must reserve judgment ... until after the fact-finding process.” Id. at 1131.

Qualifíed Immunity

Because a “constitutional right would have been violated were [the plaintiffs] allegations established,” the next step in evaluating a claim to qualified immunity “is to ask whether the right was clearly established.” Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). “Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the ‘objective legal reasonableness’ of the action assessed in light of the legal rules that were ‘clearly established’ at the time it was taken.” Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818-19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The plaintiff “bears the burden of proving that the rights [he] claims were ‘clearly established’ at the time of the alleged violation.” Moran, 147 F.3d at 844. The “contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.” Anderson, 483 U.S. at 640,107 S.Ct. 3034. “Notwithstanding this particularity requirement, ‘closely analogous preexisting case law is not required to show that a right was clearly established.’ ” Hufford, 249 F.3d at 1148 (citing White v. Lee, 227 F.3d 1214, 1238 (9th Cir.2000)).
All of the key decisions discussed supra were decided well before April of 2005, when Robinson first might have been considered for promotion to lieutenant. The Supreme Court had decided Pickering, establishing that the First Amendment protects employee speech on matters of “legitimate public concern,” in 1968. Pickering, 391 U.S. at 571-72, 88 S.Ct. 1731. It was also already clear that only a “real, not imagined, disruption” might outweigh the expressive interests of the employee, that this exception cannot serve as a “pretext,” and that “employers would be required to make an even ‘stronger showing’ of disruption when the speech dealt ... directly with issues of public concern.” McKinley, 705 F.2d at 1114. An employer’s written policy requiring speech to occur through specified “channels” had been held insufficient to justify retaliation motivated by protected speech. Anderson, 746 F.2d at 506. “[M]isuse of public funds, wastefulness, and inefficiency in managing and operating government entities” had been held “matters of inherent public concern.” Roth, 856 F.2d at 1405. Therefore, at the time defendants acted in 2005 and 2006, both the constitutional protection of employee speech and a First Amendment cause of action for retaliation against protected speech were clearly established and potentially applicable to defendants’ conduct.
In 2006, the Supreme Court clarified the existence of an exception to these precedents, holding unprotected “expressions employees make pursuant to their professional duties.” Garcetti, 547 U.S. at 426, *75 126 S.Ct. 1951. If the plaintiffs version of the facts, including his professional duties, turns out to be inaccurate, defendants may then be entitled to qualified immunity under Garcetti At this stage, however, the court evaluates only the sufficiency of the plaintiffs factual allegations and therefore “must reserve judgment on this third prong of the protected status inquiry until after the fact-finding process.” Posey, 546 F.3d at 1131. The district court’s denial of summary judgment is therefore
AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

. Defendants also cite Akins v. Gates, 2007 WL 2729006, 2007 U.S. Dist. LEXIS 68439 (N.D.Ga. Sept. 17, 2007), in support of this proposition, but the plaintiffs' speech in Akins was held to be on matters of public concern and unprotected only because it was included in their job duties.