KAREN LeCRAFT HENDERSON, Circuit Judge,
concurring in part and dissenting in part:
The Anti-Terrorism Act (ATA or Act) authorizes a United States national (or his estate, survivors or heirs) injured “by reason of an act of international terrorism” to sue in federal court for money damages. 18 U.S.C. § 2333(a). The Act defines “international terrorism” as activities that, as relevant here, “involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State.” 18 U.S.C. § 2331(1)(A). To prevail, therefore, the plaintiffs (Parsons family) must show that defendant Palestinian Authority (PA), had it acted within the jurisdiction of the United States or of any State, would have violated a criminal law of the United States or of the State. On appeal, the Parsons family alleges two such violations: (1) the PA provided material support for the killing of a U.S. national in violation of 18 U.S.C. § 2339A and (2) the PA conspired to kill a U.S. national in violation of 18 U.S.C. § 2332(b). I would affirm the district court on the alternative ground that the Parsons family has failed to establish the scienter requirement of sections 2339A and 2332(b). Accordingly, I respectfully dissent in part.[1]
I take no exception to the majority opinion’s explanation of the underlying facts. My disagreement is legal, not factual. Section 2339A criminalizes the provision of “material support or resources ... knowing or intending that they are to be used in preparation for, or in carrying out, a violation of’ certain criminal statutes. 18 U.S.C. § 2339A(a) (emphasis added). One criminal statute — 18 U.S.C. § 2332 — prohibits the killing of a U.S. national outside the United States. Section 2339A makes clear that providing material support or resources alone is not sufficient to constitute a violation. The criminal defendant must provide material support or resources “knowing or intending” that the resources “are to be used in preparation for, or in carrying out,” the underlying crime' — here, the killing of a U.S. national outside the United States. 18 U.S.C. § 2339A(a); see also United States v. Stewart, 590 F.3d 93, 113 (2d Cir.2009) (“Section 2339A ... does not penalize the provision of material support without regard to what the support is for. [It] requires instead that the defendant provide support or resources with the knowledge or intent that such resources be used to commit specific violent crimes.” (emphasis in original)); id. at 113 n. 18 (“Section 2339A criminalizes the provision of material support knowing or intending that such support is used to aid crimes of terrorism. Therefore, the mental state in section 2339A extends both to the support itself, and to the underlying purposes for which the support is given.” (emphasis in original) (internal citation omitted)). For a criminal violation of section 2339A, then, specific intent is required. See Humanitarian Law Project v. Mukasey, 552 F.3d 916, 927 (9th Cir.2009) (section 2339A requires defendant to act with specific intent), affd in part & rev’d in part on other ground sub nom. Holder v. Humanitarian Law Project, - U.S. -, 130 S.Ct. 2705, 177 L.Ed.2d 355 (2010).
The knowledge required to violate section 2339A in the context of the ATA’s *128 civil liability provision, 18 U.S.C. § 2883(a), has been subject to debate. The Seventh Circuit, sitting en banc, held that criminal recklessness suffices. Boim v. Holy Land Found, for Relief & Dev., 519 F.Sd 685, 693 (7th Cir.2008) (en banc). The defendants in Boim were accused “of having provided financial support to Ha-mas, ” which organization killed David Boim, a U.S. national living in Israel. Id. at 687-88. The court compared criminal recklessness — which “ ‘generally permits a finding of recklessness only when a person disregards a risk of harm of which he is aware’ ” — to civil recklessness — which “sometimes connotes merely gross negligence and at other times requires only that the defendant have acted in the face of an unreasonable risk that he should have been aware of even if he wasn’t”— and concluded that criminal, not civil, recklessness is required to violate sections 2389A and 2332, as incorporated into section 2333(a). Id. at 694 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1991)); id. at 693 (“[I]t would not be enough to impose liability on a donor for violating section 2333, even if there were no state-of-mind requirements in sections 2339A and 2332, that the average person or a reasonable person would realize that the organization he was supporting was a terrorist organization, if the actual defendant did not realize it.”). By way of example, the court noted that “giv[ing] a small child a loaded gun would be a case of criminal recklessness” because “the giver would know he was doing something extremely dangerous and without justification.” Id. at 693 (emphasis in original). Similarly, the court explained,
[a] knowing donor to Hamas — that is, a donor who knew the aims and activities of the organization — would know that Hamas was gunning for Israelis ..., that Americans are frequent visitors to and sojourners in Israel, that many U.S. citizens live in Israel ... and that donations to Hamas, by augmenting Hamas’s resources, would enable Hamas to kill or wound, or try to kill, or conspire to kill more people in Israel.
Id. at 693-94. In other words, the court concluded that knowingly donating money to Hamas is a criminally reckless act sufficient to violate sections 2333(a), 2339A and 2332. Three dissenting judges found the court’s reasoning “awfully vague” and accused the court of “sliding] over the statutory requirement ... that the entity providing material assistance must know that the donee plans to commit terrorist acts against U.S. citizens.” Id. at 725 (Wood, J., dissenting); see also Abecassis v. Wyatt, 704 F.Supp.2d 623, 664-65 (S.D.Tex.2010) (“[I]t is not enough [that provider of material support or resources] know the character of the ultimate [recipient of the support or resources]. The defendant must know (or intend) that its money is going to a group engaged in terrorist acts or is being used to support terrorist acts. Because civil liability under the ATA is restricted to American victims, the defendant must also know (or intend) that the terrorism or terrorist group it is supporting targets Americans.”); cf. United States v. Stewart, 590 F.3d 93, 113 & n. 18 (2d Cir.2009).
I express no opinion on the Seventh Circuit’s application of criminal recklessness to establish civil liability under the ATA for a violation of section 2339A because the Parsons family failed to establish even criminal recklessness. Significantly, the Boim court’s determination that the donors acted recklessly relied on “State Department data that in 1999 there were about 184,000 American citizens living in Israel, accounting for about 3.1 percent of the country’s population.” 549 F.3d at 694. The record here contains no data *129 suggesting a similar American presence in Gaza. Instead, the record indicates that Israelis, not Americans, were likely the intended targets of the bomb. See [Redacted] Decl. ¶ 19 (“[A] number of the individuals arrested and interrogated” by the PA after the explosion “admitted to possessing and planting explosive charges in the past, targeted at Israeli military incursions into Gaza.” (emphasis added)).[2] That Israeli tanks arrived shortly after the explosion to secure the area reinforces the inference. See id. ¶ 10. The only evidence that links the PA’s alleged provision of material support to the killing of a U.S. national is the “[conclusion and personal interpretation” of the anonymous author of an undated two-page memorandum to the “Director General of the Preventive Security Service” that PA personnel — either those at the checkpoint or those in the lead car of the convoy — “leaked” “information of the arrival of U.S. Embassy staff’ to whoever detonated the bomb.[3] Sealed App. 305. To accept the conclusion that PA personnel notified the bomber of the arrival of the U.S. convoy “would require piling inference (about the reliability and knowledgability of the statement’s author) upon inference (about when the statement was written) upon inference (about the statement’s evidentiary basis) [ ] akin more to speculation than to reasonable fact-finding” and “ ‘[t]he possibility that a jury might speculate in the plaintiffs favor ... is simply’ insufficient to defeat summary judgment.”[4] Concurring Opinion of Judge Tatel (Tatel Op.) at 134 (quoting Athridge v. Aetna Cas. & Sur. Co., 604 F.3d 625, 631 (D.C.Cir.2010)).
Judge Brown contends that the two-page memorandum is an “official government record” that is “entitled to a presumption of regularity.” Opinion of Judge Brown (Brown Op.) at 141 (citing PNC Fin. Servs. Grp., Inc. v. Comm’r, 503 F.3d 119, 123 (D.C.Cir.2007)). The government record in PNC was an official tax receipt of the Brazilian government marking the payment of a specific tax. PNC, 503 F.3d at 123. The relevant portion of the memorandum, in contrast, does not purport to memorialize the occurrence of a specific event but to offer a “[conclusion and personal interpretation.” Sealed App. 305. Because the document is unsigned and undated we cannot reasonably assume it represents the PA’s official position. We can assume only that it represents what it purports to represent — the “[c]onclusion and personal interpretation” of its author.[5] Id. (emphasis added).
*130 The other precedent Judge Brown relies on applied the presumption of regularity to the actions of American governmental officials — not foreign officials. See Musengo v. White, 286 F.3d 535 (D.C.Cir.2002) (Army officers); Am. Fed’n of Gov’t Emps. v. Reagan, 870 F.2d 723 (D.C.Cir.1989) (President of the United States); S. Pac. Commc’ns Co. v. AT & T, 740 F.2d 980, 994-95 (D.C.Cir.1984) (judge), cert. denied, 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985); McSurely v. McClellan, 697 F.2d 309, 323-24 (D.C.Cir.1982) (same), cert. denied, 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985); Jones v. United States, 342 F.2d 863, 884 (D.C.Cir.1964) (en banc) (grand jury). These cases, moreover, applied the presumption to establish that the officials followed the appropriate procedures when performing their official duties, see, e.g., Am. Fed’n of Gov’t Emps., 870 F.2d at 727-28, not to lend credence to their “conclusions, inferences, and subjective judgments,” see Brown Op. at 141. That courts presume, absent clear evidence to the contrary, duly elected or appointed American governmental officials act correctly and in compliance with applicable law does not suggest that a similar presumption attaches — or should attach — to the admittedly personal interpretation of an anonymous investigator in one of the most chaotic and irregular regions of the world.
The memorandum does not explain, moreover, why it concludes that PA personnel “leaked” news of the U.S. convoy’s arrival. The relevant portion of the memorandum states in full:
As we mentioned above, the device was present for 20 days at least, which means that the device was planted either after the problem with Ismail Hameed or it was planted for one of the vehicles of the Israeli occupation army. However, after information of the arrival of U.S. Embassy staff was leaked, either by the National Security personnel at the checkpoint or by those who were accompanying the convoy, the person responsible for the explosion detonated the device.
Id. The memorandum contains no factual basis for its conclusion that “National Security personnel” leaked news about the U.S. convoy. To conclude that the memorandum’s author “inferred” the conclusion “from the bomb’s proximity to the eheck *131 point” is simply to speculate. Brown Op. at 142. The inference that personnel at the checkpoint knew about the bomb because of its proximity to the checkpoint, even if reasonable, says nothing about the further inference that personnel at the checkpoint leaked news of the U.S. convoy’s arrival. The two inferences are unrelated. The former is supported by facts — the proximity of the bomb to the checkpoint — while the latter is not.
Because the Parsons family offers no admissible evidence to demonstrate that the PA intended or knew (or even recklessly disregarded whether) its conduct— assuming arguendo it provided material support or resources to whoever planted and detonated the bomb — would aid in the killing of a U.S. national, the PA is entitled to summary judgment on the Parsons family’s section 2339A claim.
Judge Tatel would avoid section 2339A’s scienter requirement by maintaining that the PA did not “identiffy] section 2339A’s state of mind requirement as a problem for the specific theory” accepted by the majority — “namely, that the personnel posted at the checkpoint agreed to Qarmout’s request not to interfere with his efforts to plant a bomb.” Tatel Op. at 138 (emphasis in original); see Brown Op. at 143. To the contrary, the PA repeatedly argues that the Parsons family failed to satisfy section 2339A’s scienter requirement. See Appellees’ Br. 33-34 (The Parsons family “offered no facts that could be presented in admissible form that the PA provided any kind of material support to the PRC, let alone that the PA provided such support ‘knowing or intending’ that it was ‘to be used in preparation for, or in carrying out,’ the killing of a U.S. national, as the statute requires.” (emphasis in original) (quoting 18 U.S.C. § 2339A)); id. at 41-42 (“Even if someone in the PA had given Qarmout a weapon, there is no evidence that they did so ‘knowing or intending that they are to be used’ in carrying out the killing of a U.S. national or other terrorist act, as required by 18 U.S.C. § 2339A ....”); id. at 37 (“There is no evidence that Qarmout would have targeted a U.S. diplomatic convoy.”); id. at 43 (“Plaintiffs ... do not explain how a failure to adequately guard a security checkpoint and prevent the planting of an explosive charge meets the definition of ‘material support’ under the statute. See 18 U.S.C. § 2339A(b) (which requires an affirmative act of support engaged in with the requisite knowledge and intent, rather than an act of omission or negligence).” (emphasis added)). Nor is it “unfair to the Parsons family for us to consider whether the evidence creates a genuine dispute of material fact as to” a necessary element of their claims. See Tatel Op. at 138. The PA raised the lack of admissible evidence meeting section 2339A’s scienter requirement both in its brief in this court and in its motion for summary judgment in district court. See Appellees’ Br. 33-34, 37, 41-43; Mem. of Points & Auths. in Support of Defs.’ Mot. for Summ. J. at 14, Estate of Parsons v. Palestinian Auth., 715 F.Supp.2d 27 (D.D.C.2010) (No. 07-cv-01847). The Parsons family thus has had ample opportunity to respond to the PA’s argument. See Skinner v. U.S. Dep’t of Justice, 584 F.3d 1093, 1101 (D.C.Cir.2009) (“no unfairness” in affirming on alternative ground where issue was raised before district court with full opportunity to respond), cert. denied, — U.S. -, 131 S.Ct. 72, 178 L.Ed.2d 240 (2010); Washburn v. Lavoie, 437 F.3d 84, 89 (D.C.Cir.2006); see also Wash.-Baltimore Newspa per Guild, Local 35 v. Wash. Post, 959 F.2d 288, 292 n. 3 (D.C.Cir.1992) (“We have discretion to uphold a grant of summary judgment under a legal theory different from that applied by the district *132 court, resting the affirmance on any-ground that finds support in the record, particularly one raised before the district court.” (emphasis in original)). Judge Ta-tel unrealistically parses the PA’s defense into discrete and seemingly unrelated arguments.[6] See Tatel Op. at 137-38; cf. Brown Op. at 139-40 n. 1. “[SJummary judgment is appropriate if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party’s case, and on which that party will bear the burden of proof at trial.” Talavera v. Shah, 638 F.3d 303, 308 (D.C.Cir.2011) (internal quotation marks omitted). The Parsons family failed to make a showing sufficient to establish an essential element of their claim — that the PA, assuming it provided material support, acted with knowledge or intent that its support would aid the killing of a U.S. national. The district court therefore properly granted summary judgment to the PA.
The PA is likewise entitled to summary judgment on the Parsons family’s section 2332(b) conspiracy claim. Section 2332(b) makes it a crime to “attempt! ] to kill, or engage! ] in a conspiracy to kill, a national of the United States” outside the United States. 18 U.S.C. § 2332(b). “To prove a conspiracy charge, the [evidence] must show that the defendant agreed to engage in criminal activity and ‘knowingly participated in the conspiracy’ with the intent to commit the offense.... ” United States v. Hemphill, 514 F.3d 1350, 1362 (D.C.Cir.) (quoting United States v. Gatling, 96 F.3d 1511, 1518 (D.C.Cir.1996)), cert. denied, — U.S. -, 129 S.Ct. 590, 172 L.Ed.2d 445 (2008); see also In re Terrorist Bombings of U.S. Embassies in E. Africa, 552 F.3d 93, 113 (2d Cir.2008) (to establish existence of criminal conspiracy under section 2332(b), evidence “must prove that the conspirators agreed on the essence of the underlying illegal objective[s], and the kind of criminal conduct ... in fact contemplated.” (ellipsis and alteration in original; internal quotation marks omitted)), cert denied, — U.S. -, 129 S.Ct. 2778, — L.Ed.2d - (2009), — U.S.-, 130 S.Ct. 1050, 175 L.Ed.2d 928 (2010). Section 2332(b) thus requires that a violator knowingly conspire to kill a U.S. national. As explained earlier, the Parsons family has failed to show that the PA possessed the requisite knowledge or intent to support the conspiracy claim.
For the foregoing reasons, I would affirm in toto the district court’s grant of summary judgment in favor of the PA and, accordingly, dissent from the reversal of summary judgment on the 18 U.S.C. § 2339A claim.

. I join the judgment affirming the summary judgment grant to defendant Palestinian Authority on the Parsons family’s conspiracy claim.

. [Redacted] was [Redacted] Gaza” at the time of the explosion. [Redacted] Deck ¶ 7. In that role he [Redacted] into the event. Id. ¶ 8.

. Judge Brown urges that a statement by a former head of the PSS that Palestinian security forces aided Hamas and martyred themselves during the Second Intifada “tends to support [the] conclusion” that PA personnel at the security checkpoint at least disregarded the risk that their conduct would aid in the killing of Americans. Opinion of Judge Brown at 142-43. The PSS official’s statement is an English translation found on the website of Palestinian Media Watch, an Israeli research institute, of an excerpted news clip from 2007. Assuming arguendo the website accurately translated the statement, the statement does not suggest that PA personnel would have known the bomb would target Americans.

. I find the Parsons family’s claim speculative for another reason. For PA personnel at the checkpoint — and even more so, in the convoy — to have "tipped” the bomber to the U.S. embassy staff's arrival means that those personnel had to have calibrated with pinpoint accuracy that the explosion would not affect them — otherwise, they risked their own lives as well.

. I disagree with Judge Brown that the [Redacted] Declaration supports inferences favorable to the Parsons family regarding the reliability and knowledgability of the memo *130 randum's author. See Brown Op. at 140-41. The relevant portion of the [Redacted] Declaration states:
The PSS kept an investigative file documenting the investigation, interviews, interrogations and the forensic analysis provided by the FBI. Copies of those files were provided to counsel for the PA and PLO in this matter, and I understand copies were then provided to Plaintiffs’ counsel. I was responsible for collecting, assembling, and producing the investigative file produced in this matter and for verifying that the records produced are authentic copies of records kept in the course of the investigation into the bombing.
[Redacted] Deck ¶¶ 17-18. [Redacted] statement that he was responsible for verifying that the records were "authentic copies” does not mean that he also verified the substance of each record. It means only that he verified that the records provided to counsel for the PA and PLO were accurate reproductions of records held by the PSS' — without necessarily endorsing any statements or conclusions in those records. After the above-quoted passage, moreover, the Declaration discusses — in several paragraphs that all begin "I have reviewed the investigative file .... "• — the evidence contained in Qarmout’s statement, a "true and correct copy” of which is attached to the Declaration as exhibit 1. See id. ¶¶ 19-22. In contrast to the extensive discussion of Qarmout's statement, the Declaration does not mention the memorandum. Nor is the memorandum attached as an exhibit to the Declaration, as Qarmout's statement is. Accordingly, I find nothing in the [Redacted] Declaration that supports the reliability or authoritativeness of the memorandum.

. Even under his compartmentalized approach, moreover, Judge Tatel concedes that the PA raised section 2339A's scienter requirement as a defense to the Parsons family's "Qarmout theory.” Tatel Op. at 138. He nonetheless contends that the PA's claim that “[tjhere is no evidence that Qarmout would have targeted a U.S. diplomatic convoy,” Appellees’ Br. 37 — which claim immediately follows the PA’s explanation that Qarmout was known to attack Israeli military targets— "deals with whether Qarmout committed this attack, not with the state of mind of the personnel at the checkpoint.” Tatel Op. at 138. If, however, the personnel at the checkpoint did not believe — because there was no evidence to support the belief — that Qarmout would target a U.S. convoy, any support they may have provided Qarmout would not have been given knowing or intending (or recklessly disregarding whether) it would be used to kill a U.S. national.